■ DONNA S. REDGRAVE, Appellant, v HARRY W. REDGRAVE, Respondent. [788 NYS2d 200]—

Cardona, P.J. Appeal from a judgment of the Supreme Court (Seibert, Jr., J.), entered February 20, 2004 in Saratoga County, ordering, inter alia, equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in May 1972 and have three children, one of whom is not emancipated. On May 11, 2001, plaintiff commenced this action for a divorce alleging, among other things, cruel and inhuman treatment. At the conclusion of the trial, Supreme Court dismissed the complaint, however, this Court reversed and granted plaintiff a divorce on the ground of cruel and inhuman treatment (304 AD2d 1062 [2003]). Following a trial on August 27, 2003, Supreme Court ordered equitable distribution and other relief, prompting this appeal by plaintiff.

We first address plaintiff's claim that Supreme Court erred in failing to award her one half of defendant's police pension acquired during the marriage. Although "pension rights earned during a marriage and prior to the commencement of a matrimonial action are marital property subject to equitable distribution" (*Campbell v Campbell*, 280 AD2d 837, 838 [2001], quoting *Matwijczuk v Matwijczuk*, 261 AD2d 784, 787 [1999]), the distribution of the asset is based upon "considerations of fairness and the respective situations of the parties" (*Butler v Butler*, 256 AD2d 1041, 1045 [1998], *lv denied* 93 NY2d 805 [1999]; *see* Domestic Relations Law § 236 [B] [5] [c]; *Gasiorowski v Gasiorowski*, 267 AD2d 557, 558 [1999], *lv denied* 94 NY2d 762 [2000]).

Here, at the time of trial, defendant was receiving pension payments totaling $20,623 per year. In addition, he was employed full time with State Farm Insurance and, during the year 2002, earned $34,494 from that employment. On the other hand, during the same year, plaintiff earned $273,551 from her employer, Sneeringer, Monahan, Provost, Redgrave Title Agency, Inc. (hereinafter SMPR). Given the disparity in the parties' incomes, including plaintiff's greater capacity for increases in her future earnings, our determination concerning defendant's entitlement to maintenance, *infra*, and considering the remainder of Supreme Court's distribution of marital assets, we cannot say that the decision to award defendant his entire pension was an abuse of discretion (*see Gasiorowski v Gasiorowski, supra* at 557-558; *Butler v Butler, supra* at 1045).

We next address plaintiff's argument that Supreme Court erred in awarding defendant $152,500 representing 50% of the value of her 8% ownership interest in SMPR. Supreme Court is vested with " 'substantial discretion in determining what distribution of marital property will be equitable under all the circumstances' " (*Farrell v Cleary-Farrell*, 306 AD2d 597, 599 [2003], quoting *Owens v Owens*, 288 AD2d 782, 783 [2001]). Here, the evidence shows that defendant made economic and noneconomic contributions to the acquisition of plaintiff's interest in SMPR (*see* Domestic Relations Law § 236 [B] [5] [d] [6]; *O'Brien v O'Brien*, 66 NY2d 576, 584 [1985]). The parties used $3,000 in marital funds for plaintiff to purchase her original 50% interest in Provost and Redgrave Title Services, Inc. in 1986.[1] Furthermore, defendant joined in the purchase of the two buildings which housed that business and now SMPR. He performed maintenance and repairs and assisted in both the development and administration of the office computer system. Defendant introduced plaintiff to a number of potential clients and accompanied her to numerous social functions related to the business. During the seven years following his retirement from the City of Saratoga Police Department in 1993 and prior to his reentry into the workforce, defendant helped with the care of the parties' three children and the home while plaintiff developed her practice. Having examined the circumstances of this case and the pertinent statutory factors, including the 29-year duration of the marriage, plaintiff's and defendant's ages

---

1. In 1996, Provost and Redgrave merged with Sneeringer and Carmody, Inc. to form Sneeringer, Provost, Redgrave Title Agency, Inc. and plaintiff obtained a 10% interest in that business. Then, in June 2001, that firm merged with Monahan Title Insurance to form SMPR and plaintiff obtained her 8% interest in that business.

at the time of trial, 50 and 54, respectively (*see* Domestic Relations Law § 236 [B] [5] [d] [2]), we cannot say that Supreme Court abused its discretion in awarding defendant 50% of plaintiff's interest in SMPR.[2]

Next, we address the issue of reimbursements to defendant regarding expenditures for the marital residence. Supreme Court directed plaintiff to reimburse defendant for *all* of his expenditures made in connection with the marital residence (i.e., mortgage, real estate taxes and insurance) during the pendency of the action. We find that direction to be improvident because plaintiff continued to share equally in the payment of the mortgage and taxes through May 2002 and defendant "enjoyed the exclusive use and possession" of the marital residence during the pendency of the action (*Solomon v Solomon*, 307 AD2d 558, 561 [2003], *lv dismissed* 1 NY3d 546 [2003]). Under the circumstances, we find that plaintiff should only reimburse defendant for one half of the amount by which the mortgage principal has been reduced from June 2002 up to the time the residence is sold or transferred (*see Arnold v Arnold*, 309 AD2d 1043, 1045 [2003]; *Walters v Walters*, 252 AD2d 775, 776 [1998]).

Turning to plaintiff's claim that Supreme Court erred by failing to direct defendant to contribute to the college expenses of two of the parties' children, we agree with defendant that plaintiff made no actual request for that relief. However, proof was offered on this issue at trial and, therefore, despite the absence of a request for such relief, we find the issue was properly before Supreme Court and before us for review (*cf. Matter of Gatto v Steinberg*, 245 AD2d 875, 876 [1997]).

Concerning college costs, plaintiff indicated that she was liable for repaying two college loans totaling approximately $18,000 for the benefit of the parties' son before he turned 21. Plaintiff further stated that tuition, room and board at their daughter's college was $14,000 per semester and plaintiff had already paid for the first semester. However, given the absence of a voluntary agreement between the parties to provide for college expenses, defendant's current child support obligation and his financial ability to pay, we do not find the existence of special circumstances (*see* Domestic Relations Law § 240 [1-b] [c] [7]), nor do we find other considerations present to require defen-

---

2. Contrary to plaintiff's contentions, neither defendant's marital fault nor his alleged economic misconduct in removing himself from the workforce for seven years warrants a reduction in the division of this asset (*see O'Brien v O'Brien, supra* at 589-590; *Blickstein v Blickstein*, 99 AD2d 287, 292 [1984], *appeal dismissed* 62 NY2d 802 [1984]).

dant to make payments for college expenses (see *Brough v Brough*, 285 AD2d 913, 917 [2001]).

Lastly, we find merit in plaintiff's argument that Supreme Court improperly awarded defendant maintenance in the amount of $300 weekly, although for different reasons. We begin by noting that "this Court's authority is as broad as Supreme Court's in resolving questions of maintenance" (*Smith v Smith*, 249 AD2d 813, 814 [1998]). Addressing the issue, we do not agree with Supreme Court's finding that defendant was incapable of supporting himself, "in the style and at the level maintained during the marriage." Defendant still resides in the former marital residence and indicated that he could continue to do so on his own income, once his preapproved refinance is completed. Defendant conceded that many of the "expenses" on his statement of net worth were no longer in existence at the time of trial. He stated that he was still able to take annual vacations and continue in his sailing club. The only predivorce activity which he allegedly could not afford was his hobby of recreational flying, although he did continue his membership in the flying club.

While a court "must consider the payee spouse's reasonable needs and predivorce standard of living," it must do so "in the context of the other enumerated statutory factors, and then, in [its] discretion, fashion a fair and equitable maintenance award" (*Hartog v Hartog*, 85 NY2d 36, 52 [1995]; *see* Domestic Relations Law § 236 [B] [6] [a] [1]-[11]). We acknowledge that this is a long-duration marriage and plaintiff's income is significantly higher than defendant's. However, taking into consideration defendant's age and relative good health, the substantial cash distribution he will receive,[3] his ability to increase his earned income by working overtime, and the negligible diminution in his predivorce standard of living, we determine that an award of maintenance is inequitable, particularly in light of the increased college expenses that plaintiff will shoulder. Therefore, under all the circumstances, we reverse that part of Supreme Court's judgment awarding maintenance to defendant.

We have examined plaintiff's remaining contention in reference to the distribution of the boat and trailer and find it to be without merit.

Mercure, Peters, Spain and Carpinello, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without

___

**3.** We also note that Supreme Court awarded defendant a *Majauskas* share of plaintiff's retirement savings and profit sharing plan provided by her employer, SMPR (*see Majauskas v Majauskas*, 61 NY2d 481, 486 [1984]; *see also* Domestic Relations Law § 236 [B] [1] [c]).

costs, by reversing so much thereof as (1) required plaintiff to reimburse defendant for all mortgage payments, real estate tax payments and homeowner's insurance bills which came due during the pendency of the action or would become due after the date of Supreme Court's decision and (2) awarded maintenance to defendant; plaintiff is required to reimburse defendant for one half of the amount by which the mortgage principal has been reduced from June 2002 up to the time the residence is sold or transferred; and, as so modified, affirmed.

