McCarthy, J.
The parties were married in September 2002. In June 2010, when plaintiff was 48 and defendant was 54, plaintiff commenced this divorce action. In response to a request for temporary relief, Supreme Court (Platkin, J.) granted plaintiff exclusive use and occupancy of the marital residence, instructed defendant to pay carrying costs on the residence, awarded *942 plaintiff $250 per month in temporary maintenance and ordered the equal division of a Charles Schwab investment account held in defendant’s name that was valued at around $20,000. Following a nonjury trial, Supreme Court (Teresi, J.) granted plaintiff a divorce, equitably distributed the parties’ property, and awarded plaintiff exclusive use of the marital residence until August 2012 and maintenance of $250 per month for 15 months[1] and $125 per month for three years thereafter or until she remarries, whichever comes first. Disagreeing with aspects of the award of maintenance and property distribution, plaintiff appeals. Defendant cross-appeals.
Supreme Court did not err with respect to its award of maintenance to plaintiff. The amount and duration of spousal maintenance is a matter left to the sound discretion of the trial court, after considering statutory factors and the parties’ predivorce standard of living (see Domestic Relations Law § 236 [B] [6] [a]; Scarpace v Scarpace, 84 AD3d 1537, 1537 [2011]). The court identified 11 factors that it found particularly relevant here. This was not a marriage of long duration, the parties did not have any children in common, they are in relatively good health and employed, and they enjoyed an upper middle class standard of living. Plaintiff has been occupying the marital residence— which is defendant’s separate property — while defendant has been paying the carrying costs.[2] Although plaintiff earns significantly less than defendant, her salary is approximately $40,000 and she receives child support for her child from a previous marriage. She is also attending college and plans to become a certified public accountant in the near future, which will enhance her earning potential. “[M]indful that the primary purpose of maintenance is to encourage self-sufficiency by the recipient,” and noting that Supreme Court considered the relevant statutory factors, we cannot say that the court abused its discretion in awarding plaintiff maintenance of $250 per month for 15 months and then $125 per month for either three years or until she remarries (Quinn v Quinn, 61 AD3d 1067, 1071 [2009]; see Maggiore v Maggiore, 91 AD3d 1096, 1097 [2012]).
*943 Supreme Court did not err in distributing the appreciation in value of the marital residence. The parties agree that the residence, which defendant owned prior to the marriage, is defendant’s separate property (see Keil v Keil, 85 AD3d 1233, 1235 [2011]). Appreciation in value of separate property can become marital property if the appreciation is due to the contributions or efforts of the nontitled spouse (see Johnson v Chapin, 12 NY3d 461, 466 [2009]). The parties stipulated that the residence increased in value by $105,500 between the date of marriage and date of commencement of the divorce action, and that they spent $185,000 to improve the home. The trial evidence showed that defendant was more personally involved in the renovations than plaintiff. The renovations were paid for with marital funds. According to an appraisal in the record, however, the improvements only accounted for approximately $11,000 of the increase in value. Considering the parties’ different levels of involvement, and that most of the appreciation was passive based on market forces rather than related to the improvements, the court did not err in granting plaintiff 15% of the amount of the property’s appreciation (see id. at 466-467; Keil v Keil, 85 AD3d at 1236).
Plaintiff was entitled to a credit for half of the marital funds used to reduce defendant’s separate indebtedness. “If marital assets are used to reduce one party’s separate indebtedness, the other spouse can recoup his or her equitable share of the expended marital funds” (Burtchaell v Burtchaell, 42 AD3d 783, 786 [2007]; see Lewis v Lewis, 6 AD3d 837, 839 [2004]; Micha v Micha, 213 AD2d 956, 957 [1995]). Defendant testified that he had a mortgage and a home equity line of credit as liens against his home prior to the marriage. In 2003, shortly after the marriage, he refinanced the mortgage and paid off the existing line of credit by rolling it into the new mortgage. The parties each testified that the mortgage payments were made from a checking account where both parties deposited their paychecks. The amount of the refinanced mortgage was reduced by $24,028 during the marriage. As these payments from marital funds reduced defendant’s indebtedness on his separate property, plaintiff is entitled to recoup $12,014, or half of the marital funds applied to this separate debt (see Micha v Micha, 213 AD2d at 957-958).
Supreme Court properly divided the debt from the home equity line of credit. After refinancing the mortgage, defendant took out a new line of credit. Both parties testified that it was repeatedly borrowed against and paid down during the marriage from marital funds. Defendant testified that they bor *944 rowed to pay for home maintenance and repairs, vehicles, furniture and other living expenses. As this evidence established that the line of credit was used for marital expenses and plaintiffs evidence did not refute this, the court did not abuse its discretion by equally dividing the debt between the parties (see Evans v Evans, 55 AD3d 1079, 1081 [2008]).
We modify Supreme Court’s distribution of the parties’ retirement accounts. The court relied upon the same factors for analyzing defendant’s retirement plan as for plaintiffs retirement plan and IRA, yet awarded plaintiff 10% of defendant’s account while giving defendant 20% of plaintiffs accounts. Based on the parties’ disparate incomes, and the court’s lack of any explanation for the discrepancy in the percentages awarded for these similar assets, we modify by awarding each party 10% of the other’s retirement plans. Hence, plaintiff is entitled to reimbursement from defendant of $880.63 from her retirement account and $2,420.30 from her IRA.
The record does not include any value for defendant’s three IRAs for any time period between the date of commencement of the action and the date of trial. As Supreme Court must use a valuation date within that time frame (see Domestic Relations Law § 236 [B] [4] [b]; Mesholam v Mesholam, 11 NY3d 24, 28 [2008]), the court could not assign a value to these assets. The burden of proving the value of a pension rests on the party seeking an equitable share of that pension (see Parrish v Parrish, 213 AD2d 928, 928 [1995]; Grenier v Grenier, 210 AD2d 557, 558 [1994]). Because plaintiff did not meet her burden, the court did not err in declining to distribute any portion of defendant’s IRAs to plaintiff.
Supreme Court erred by ordering defendant to reimburse plaintiff for all withdrawals from his Charles Schwab account made in the six months prior to commencement of this action. A court may consider transfers made in contemplation of a matrimonial action as one of the factors in equitably distributing marital property (see Domestic Relations Law § 236 [B] [5] [d] [13]). In the months prior to commencement, and after defendant had informed plaintiff of his desire to end the marriage, defendant withdrew over $17,000 from the subject account. The account was marital property, so the court did not err in determining that plaintiff was entitled to credit for some of the amounts that defendant had withdrawn from that account. On the other hand, plaintiff already received the benefit of the amounts that defendant used to make a payment toward the loan on plaintiffs vehicle and for a utility bill at the marital residence where she was living. These were not improper *945 transfers made in contemplation of the divorce but, instead, were ordinary living expenses that inured to plaintiffs benefit. Thus, the court erred in requiring defendant to repay plaintiff $500, representing half of the vehicle payment, and $505.82, representing half of the utility bill (see Matwijczuk v Matwijczuk, 290 AD2d 854, 856 [2002]).
The parties’ remaining contentions have been reviewed and do not warrant further modification of Supreme Court’s judgment.
Mercure, J.P., Rose, Kavanagh and Egan Jr., JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by (1) granting plaintiff a credit of $12,014 for the payments of marital funds used to reduce the mortgage on defendant’s separate property, (2) awarding defendant 10% of plaintiffs retirement plan and IRA rather than 20%, amounting to a reimbursement to plaintiff of $880.63 from her retirement account and $2,420.30 from her IRA, and (3) reimbursing defendant $1,005.82 of repayments he made to plaintiff for withdrawals from his Charles Schwab account, and, as so modified, affirmed.

. The judgment contradictorily states that $250 should be paid for 12 months and 15 months. Defendant appears to concede that Supreme Court intended that amount to be paid for 15 months.

. Defendant argues that Supreme Court erred in granting plaintiff exclusive occupancy of his separate property following judgment, but he acknowledges that the argument is largely academic given the timing of this appeal and the expiration of the period of occupancy in August 2012. Thus, he asks us to consider this situation, namely his payments towards plaintiffs living expenses, in the context of determining the appropriateness of the ordered maintenance.