■ JOHN J. MCCAFFREY JR., Appellant-Respondent, v CAROLYN MCCAFFREY, Respondent-Appellant. [967 NYS2d 162]—

Spain, J. Cross appeals from a judgment of the Supreme Court (Teresi, J.), entered February 17, 2012 in Albany County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in 1999. In late 2010, plaintiff (hereinafter the husband) commenced the instant action and the parties subsequently consented to a no-fault divorce. The parties stipulated to the value of the marital home and the division of certain marital property and the action proceeded to a nonjury trial for resolution of the remaining maintenance and equitable distribution issues. Following trial, Supreme Court, among other things, distributed the parties' marital debt to the husband, awarded defendant (hereinafter the wife) maintenance and a portion of the husband's enhanced earnings attributable to his college degrees, and ordered the wife to reimburse the husband for certain mortgage payments that accrued during the pendency of the action. The husband now appeals and the wife cross-appeals.

The husband first argues that Supreme Court abused its discretion by awarding the wife maintenance, which he contends is excessive and unwarranted in light of the wife's ability to be self-supporting and because, he argues, the court improperly found that he had wastefully dissipated marital assets. Viewing the record in its totality, we agree. "[T]he primary purpose of maintenance is to encourage self-sufficiency by the recipient" (*Quinn v Quinn*, 61 AD3d 1067, 1071 [2009]; *accord Biagiotti v Biagiotti*, 97 AD3d 941, 942 [2012]), and "[m]aintenance is appropriate where . . . the marriage is of long duration, the recipient spouse has been out of the work force for a number of years, has sacrificed her or his own career development or has made substantial noneconomic contributions to the household or to the career of the payor" (*Ndulo v Ndulo*, 66 AD3d 1263,

1265 [2009]; *see Williams v Williams*, 99 AD3d 1094, 1095 [2012]). Here, the parties' marriage was not of particularly long duration (12 years), and they had no children together. When this action was commenced, the husband was 52 years old and the wife was 42 years old. Both parties were in good health and were gainfully employed, with the husband earning an annual salary of approximately $113,000 and the wife earning an annual salary of $65,000 (*compare Williams v Williams*, 99 AD3d at 1095-1096). In addition, the wife had separate property consisting of $66,000 in a trust account and $27,000 in savings bonds, both of which she testified were in her name but had been set aside by her parents for their elder care. Supreme Court found that both parties were self-supporting, and they stipulated to an equal division of their retirement and deferred compensation plans and neither party lost health insurance as a result of the divorce.

The wife correctly notes that "[t]he fact that [she] has the ability to be self-supporting by some standard of living does not mean that she is self-supporting in the context of the marital standard of living" (*Ndulo v Ndulo*, 66 AD3d at 1265; *see Williams v Williams*, 99 AD3d at 1096). However, "[t]he determination of an appropriate maintenance award requires[, among other things,] a delicate balanc[e] of each party's needs and means [or ability to pay]" (*Mairs v Mairs*, 61 AD3d 1204, 1208 [2009] [internal quotation marks and citation omitted]; *see* Domestic Relations Law § 236 [B] [6] [a]; *McAuliffe v McAuliffe*, 70 AD3d 1129, 1134 [2010]; *Lorenz v Lorenz*, 63 AD3d 1361, 1363 [2009]; *Gaglio v Molnar-Gaglio*, 300 AD2d 934, 939 [2002]). The record demonstrates that the parties' relatively high predivorce standard of living would not have been sustainable without the significant credit card debt. Indeed, the parties refinanced the marital residence, relying on much of its equity to reduce their debt. In our view, Supreme Court gave inadequate consideration to the balancing of the wife's needs—for which her own salary should provide adequate support—with the husband's ability to pay (*see* Domestic Relations Law § 236 [B] [6] [a]).

Moreover, the husband's alleged wasteful dissipation of marital assets as a ground for awarding maintenance is not supported by the record. The husband's minor legal expenses (around $1,100) associated with his defense of a criminal charge did not constitute wasteful dissipation of marital assets (*see Kohl v Kohl*, 24 AD3d 219, 219 [2005]). The record also demonstrates that the husband's expenditures on his paramour and their child—who was conceived during the husband's mar-

riage to the wife and born while this action was pending—were incurred after the date of commencement. Furthermore, the record reflects that the husband gambled only a few times during the parties' marriage, spent no more than $2,000 and broke even on all accounts, which does not rise to the level of wasteful dissipation (see *Treffiletti v Treffiletti*, 252 AD2d 635, 636-637 [1998]; compare *Burnett v Burnett*, 101 AD3d 1417, 1419 [2012]). Although the wife accused the husband of incurring significant credit card debt without her knowledge, he testified that all of the charges—including those on his personal credit cards—were made for marital, household and work-related expenses. The wife did not rebut this testimony and, thus, the parties' credit card debt, including that charged on the husband's credit cards, was marital debt rather than wasteful dissipation of marital assets (see *Biagiotti v Biagiotti*, 97 AD3d at 943-944; *Evans v Evans*, 55 AD3d 1079, 1081 [2008]).

While "[t]he amount and duration of [a maintenance] award are addressed to the sound discretion of the trial court" (*Murray v Murray*, 101 AD3d 1320, 1322 [2012], lv dismissed 20 NY3d 1085 [2013]; see Domestic Relations Law § 236 [B] [6] [a]), "this Court's authority is as broad as Supreme Court's in resolving questions of maintenance" (*Quinn v Quinn*, 61 AD3d at 1071 [internal quotation marks and citations omitted]). Accordingly, we find that under the circumstances of this case—where the marriage was not of particularly long duration, the parties had no children, the wife has stable employment that provides her a significant salary, the wife is not losing retirement or health benefits and the parties' predivorce standard of living was falsely inflated by overextended lines of credit—the statutory factors do not support an award of maintenance (see Domestic Relations Law § 236 [B] [6] [a] [1]-[20]; *Gandhi v Gandhi*, 283 AD2d 782, 786 [2001]).

We further agree with the husband that Supreme Court erred by ordering him to pay the wife $37,110—half of the money that the parties borrowed against their equity in their marital residence. In 2010, the parties refinanced the marital residence and borrowed approximately $74,000 against that equity to pay their outstanding credit card balances. While the wife denied knowledge of or complicity in the extent of the parties' credit card debt, she admitted that the husband discussed the refinance with her, she signed the refinance application and agreement—which listed the balances owed on each card—and she agreed to refinance in order to pay off their credit cards. Supreme Court found that the husband took the proceeds of this refinance and spent it entirely on personal expenses,

gambling and his paramour and, as a result, it ordered him to pay the wife half of the refinance proceeds. However, the parties' credit card statements establish—and the wife does not dispute—that the refinancing proceeds were actually used by the husband to pay off the outstanding marital credit card balances.[1] Accordingly, the court's award of 50% of the monies used by the husband to pay off the parties' credit card debt to the wife—debt that was actually no longer owed[2] —was error (see *Biagiotti v Biagiotti*, 97 AD3d at 943-944; *Corbett v Corbett*, 6 AD3d 766, 768 [2004]; *Spenello v Spenello*, 274 AD2d 822, 825 [2000]).

We discern no error in Supreme Court's distribution of the enhanced earning capacity created by the husband's two college degrees, and reject the husband's arguments that the wife failed to prove that the degrees resulted in enhanced earnings or that she substantially contributed to their attainment.[3] To be entitled to a share of the value of the husband's degrees, the wife "must demonstrate that the degree[s] enhanced [the husband's] earning capacity and that she, in a meaningful and substantial way, contributed to his efforts in obtaining [them]" (*Evans v Evans*, 55 AD3d at 1080; *see McAuliffe v McAuliffe*, 70 AD3d at 1136). During the marriage, the husband earned an Associate's degree in telecommunications and a Bachelor's degree in business administration with a minor in accounting. He received numerous promotions throughout the marriage, eventually holding the title of director of a department relevant to his degrees; the husband argues that these promotions were not attributable to his degrees and that Supreme Court should have found that the degrees did not enhance his earnings at all.

Richard Jones, a jointly retained consultant, opined that the value of the enhanced earnings attributable to the husband's degrees at the date of commencement was $204,000. Supreme Court found that 25% ($51,000) of that value constituted separate property and, further, that only 50% ($76,500) of the husband's enhanced earning potential was traceable to his

1. The husband applied the proceeds of the refinancing to the balances of the credit cards as follows: (1) $4,966 to one account; (2) $27,617.14 to another; (3) $15,600 to another; and (4) $24,079.18 to another.

2. The parties each accrued additional credit card debt after the commencement of this action that does not qualify as marital debt and is not subject to equitable distribution (*see* Domestic Relations Law § 236 [B] [1] [c]; *Zwickel v Szajer*, 45 AD3d 1222, 1224 [2007]).

3. In light of our elimination of the maintenance award, we need not address the husband's arguments with respect to whether Supreme Court erred under *Grunfeld v Grunfeld* (94 NY2d 696 [2000]) by failing to conduct a double dipping analysis.

degrees. The court awarded the wife 15% of that amount, totaling $11,475. In addition to Jones' expert opinion, evidence of the enhanced earnings included an evaluation in his personnel file that remarked on the beneficial effect that his degrees had on his employment and the fact that he included his degrees on every promotion application. Although two witnesses from the husband's employment testified that his degrees were not required for his promotions and that his promotions were mostly attributable to his superior job performance, neither witness testified that his degrees were not a factor in his promotions (*compare Evans v Evans*, 55 AD3d at 1080). Accordingly, Supreme Court "arrive[d] at [a] determination[ ] that w[as] supported by the credible evidence introduced at trial" (*McAuliffe v McAuliffe*, 70 AD3d at 1137 [internal quotation marks and citation omitted]).

Nor do we agree with the husband that the wife failed to prove that she contributed in a substantial way to his attainment of the degrees, which depends on whether she "altered . . . her schedule and/or took on additional household duties that . . . she would not have otherwise performed, in order to enable [the husband] to obtain the . . . degree[s]" (*Quarty v Quarty*, 96 AD3d 1274, 1277 [2012]; *see Sadaghiani v Ghayoori*, 83 AD3d 1309, 1310 [2011]). The wife testified that while the husband was in school, she rearranged her schedule, transported him to and from classes, and assumed a greater share of the household responsibilities, and she averred that part of the husband's tuition was paid for by marital funds. Accordingly, we cannot say that Supreme Court abused its discretion in finding that the wife contributed to the husband's degrees (*see Sadaghiani v Ghayoori*, 83 AD3d at 1311; *Carman v Carman*, 22 AD3d 1004, 1007 [2005]).

The wife's assertion that Supreme Court erroneously distributed to her only a limited percentage of the husband's enhanced earning value is likewise without merit. "[W]here only modest contributions are made by the nontitled spouse toward the other spouse's attainment of a degree . . . and the attainment is more directly the result of the titled spouse's own ability, tenacity, perseverance and hard work, it is appropriate for courts to limit the distributed amount of that enhanced earning capacity" (*Esposito-Shea v Shea*, 94 AD3d 1215, 1217 [2012] [internal quotation marks and citation omitted]). The husband expended significant effort in obtaining his degrees; he attended night classes while working full time, and occasionally at a part-time second job. Moreover, much of his professional success was attributable to his superior job performance. Thus, Supreme

Court's limited distribution to the wife of only 15% of the enhanced earnings was well within its discretion (*see Esposito-Shea v Shea*, 94 AD3d at 1217; *Sadaghiani v Ghayoori*, 83 AD3d at 1311; *Carman v Carman*, 22 AD3d at 1006).

Regarding the mortgage payments, it was error to order the wife to reimburse the husband for the full amount of the monthly mortgage payments through the pendency of this action. The wife moved out of the residence in late November 2010, prior to the commencement of this action; from that point on, the husband, his paramour and their child together had exclusive use and occupancy of the home. Accordingly, the husband should only be reimbursed for "one half of the amount by which the mortgage principal has been reduced" (*Redgrave v Redgrave*, 13 AD3d 1015, 1018 [2004]; *see Le v Le*, 82 AD3d 845, 846 [2011]; *Arnold v Arnold*, 309 AD2d 1043, 1045 [2003]).

Additionally, the parties' 180,000 American Express reward points that were accumulated during the marriage should have been distributed equally between them (*see* Domestic Relations Law § 236 [B] [5] [c]; *Hale v Hale*, 16 AD3d 231, 235 [2005]). Finally, in light of our other findings, the wife now may be entitled to counsel fees (*see* Domestic Relations Law § 237 [a]), which Supreme Court denied. We therefore remit to Supreme Court for reconsideration of whether such an award would be appropriate.

The parties' remaining contentions have been examined and we find that further modification is not warranted.

Rose, J.P., Lahtinen and Garry, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as (1) awarded defendant maintenance, (2) awarded defendant $37,100 as reimbursement for the refinancing proceeds, and (3) awarded plaintiff a credit for the mortgage payments of $1,710 per month between December 2010 and February 2012; award plaintiff only one half of the amount by which the mortgage principal was reduced between December 2010 and February 2012 and award defendant one half of the American Express reward points, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

