■ ANTHONY J. CORNISH, Appellant-Respondent, v NANCY M. ERACA-CORNISH, Respondent-Appellant. [968 NYS2d 659]—

Garry, J. Cross appeals from a judgment of the Supreme Court (Cerio Jr., J.), entered July 7, 2011 in Chemung County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.

The parties were married in 1991 and have three children (born in 1991, 1994 and 1997). In 2010, plaintiff (hereinafter the husband) commenced this action for divorce, and defendant (hereinafter the wife) filed a counterclaim also seeking divorce. Custody of the parties' two minor children was resolved by order of the Family Court (Buckley, J.). The husband thereafter withdrew his complaint and consented to a default judgment of divorce on the grounds asserted in the wife's counterclaim. A nonjury trial was conducted on the remaining issues of equitable distribution, maintenance, child support and counsel fees. Supreme Court, among other things, granted the wife exclusive possession of the marital residence until the youngest child's 21st birthday, ordered the wife to pay $100 per week in maintenance for one year and child support in the amount of $59.09 per week, awarded the husband 30% of the wife's pension and equitably distributed the parties' marital assets and debts. The husband appeals and the wife cross-appeals.

The husband first challenges Supreme Court's equitable distribution of the marital assets and debts. "Trial courts are accorded substantial deference in determining what distribution of marital property is equitable, and such determinations will not be disturbed if the court considered the statutory factors and did not abuse its discretion" (*Altieri v Altieri*, 35 AD3d 1093, 1094-1095 [2006] [citations omitted]; *see Roberto v Rob-*

*erto,* 90 AD3d 1373, 1375-1376 [2011]). Although the court failed to explicitly enumerate the requisite statutory factors (*see* Domestic Relations Law § 236 [B] [5] [d]), it is clear from the decision that each was appropriately taken into. consideration and we discern no abuse of discretion (*see Lurie v Lurie,* 94 AD3d 1376, 1378 [2012]; *Noble v Noble,* 78 AD3d 1386, 1387 [2010]; *Bean v Bean,* 53 AD3d 718, 721-722 [2008]).

With regard to possession of the marital residence, we note that the wife is the custodial parent of the parties' youngest child and is financially able to pay the mortgage and meet the other maintenance costs of the residence (*see Murray v Murray,* 101 AD3d 1320, 1324 [2012], *lv dismissed* 20 NY3d 1085 [2013]; *Nissen v Nissen,* 17 AD3d 819, 820 [2005]). At the time of trial, the father was living rent-free with his parents, and the marital residence was encumbered by tax liens and the mortgage such that an immediate sale would not have resulted in proceeds to be distributed. We thus find no error in Supreme Court's award of exclusive possession to the wife (*see Sember v Sember,* 72 AD3d 1150, 1151 [2010]; *Stricos v Stricos,* 263 AD2d 659, 660-661 [1999]).

Nor do we agree with the husband's argument that Supreme Court erred in allocating the parties' outstanding income tax liability, which was attributable in part to the wife's earnings and in part to distributions received by the husband from an inheritance that was his separate property. Each party presented expert testimony as to the appropriate allocation of this liability. The court agreed with the husband's expert that the allocation proposed by the wife's expert imposed a lower marginal tax rate on the wife's earnings than on the husband's inheritance income. Nonetheless, this favorable treatment was deemed appropriate as the wife's earnings were marital income that had provided the family's primary means of support throughout the marriage, while the husband's inheritance was "fortuitously" acquired as separate property and was exhausted after several years of withdrawals.[1] While the husband's expert proposed an alternate methodology, Supreme Court is entitled to deference as the trier of fact in the weight that it accords to conflicting expert testimony, and we find that the record supports its determination (*see Evans v Evans,* 55 AD3d 1079, 1080 [2008]; *Fuchs v Fuchs,* 276 AD2d 868, 869 [2000]).

With regard to the equitable distribution of the parties' credit

---

1. Supreme Court acknowledged that the husband used part of his inheritance income for such marital needs as vehicles and a down payment on the marital residence, and granted him a separate property credit for the down payment (*see Noble v Noble,* 78 AD3d at 1389).

card debt, we note that, while the record reflects that the debt was largely incurred to meet household expenses, there was also evidence that the husband frequently used the parties' credit cards to make unnecessary purchases. Thus, given the long duration of the marriage, the sources of the debt and the parties' relative earning capacities, we find no abuse of discretion in Supreme Court's equal distribution of this debt between the parties (*see Biagiotti v Biagiotti*, 97 AD3d 941, 943-944 [2012]; *Evans v Evans*, 55 AD3d at 1081; *McKeever v McKeever*, 8 AD3d 702, 702-703 [2004]). However, as the order fails to precisely articulate how the division is to be accomplished, we will modify the judgment to clarify that this debt consists of all those accounts for which statements were included in defendant's exhibit A, and that each party is responsible for one half of the balances shown on those statements.

Next, the husband argues that Supreme Court should have awarded him one half of the wife's pension, which is marital property to be distributed "based upon considerations of fairness and the respective situations of the parties" (*Redgrave v Redgrave*, 13 AD3d 1015, 1016 [2004] [internal quotation marks and citation omitted]).[2] The record indicates that the parties' arrangement was for the husband to take on the responsibilities of homemaker and primary caretaker of the children while the wife provided financial support for the family, but it further reveals that the husband's alcoholism interfered with his ability to contribute to the household and that his parents provided a substantial amount of the children's care. Moreover, the wife testified that, after the children had attained school age, she repeatedly asked the husband to find employment or return to school. Despite the family's financial difficulties and reliance upon financial assistance from the husband's mother, the husband refused. We find no abuse of discretion in Supreme Court's award of 30% of the pension to the husband in light of his "limited contribution to the economic partnership of this marriage" (*Holmes v Holmes*, 25 AD3d 931, 934 [2006]).

"The amount and duration of [a maintenance award] are addressed to the sound discretion of the trial court, and will not be disturbed provided that the statutory factors and the parties' predivorce standard of living are considered" (*Murray v Murray*, 101 AD3d at 1322 [citations omitted]; *see Biagiotti v Biagiotti*, 97 AD3d at 942). Here, given the length of the marriage and the husband's role as caretaker of the children and home, an award of maintenance was appropriate (*see O'Connor v*

---

**2.** Although the wife had earned part of this pension before the marriage, she agreed to treat the pension earned to date as marital property.

*O'Connor*, 91 AD3d 1107, 1108 [2012]; *Scarpace v Scarpace*, 84 AD3d 1537, 1538 [2011]). However, there was scant evidence that the husband sacrificed educational or career opportunities in favor of his role in the family. As stated above, the husband refused to seek employment or further his education after the parties' children were in school, despite the wife's requests that he do so and the family's financial distress. Additionally, he refused to take advantage of several opportunities to advance his education, including utilizing tuition credits available through the wife's employment. Moreover, the record reveals that the husband had stopped drinking before the divorce, had no mental or physical barriers to employment, and was operating an eBay business at the time of trial. Although he provided no accounting of this business, his statement of net worth reflects an income level that cannot be attributed to his newspaper delivery job, maintenance and child support alone. Accordingly, we find no error in the amount of annual income that Supreme Court imputed to the husband. Likewise, the record supports the income imputed to the wife, based upon her employment history, the status of her private law practice and her teaching stipend.

Supreme Court did not abuse its discretion in precluding the husband's testimony regarding his search for employment, as he failed to provide a meaningful response to the wife's interrogatory concerning this issue or a reasonable excuse for this failure (*see Robustelli v Robustelli*, 262 AD2d 390, 390 [1999]; *compare Kumar v Kumar*, 63 AD3d 1246, 1248-1249 [2009]). The record also supports the court's finding that the family's financial stability before the divorce was "illusory" and that their relatively high standard of living resulted in large part from spending beyond their means (*see McCaffrey v McCaffrey*, 107 AD3d 1106, 1107 [2013]). Given all of the circumstances, we find no abuse of discretion as to the amount and duration of the maintenance award (*see Williams v Williams*, 99 AD3d 1094, 1096 [2012]; *Roberto v Roberto*, 90 AD3d at 1376).

Similarly, the child support award was appropriate based upon the income imputed to the parties and was consistent with the provisions of the Child Support Standards Act (*see* Domestic Relations Law § 240 [1-b]). However, as the parties stipulated that the wife would pay maintenance and child support through the Chemung County child support collection unit rather than

directly to the husband, the order will be modified to provide for such payment in the manner directed by that entity.[3]

"Whether counsel fees should be awarded is left to the sound discretion of [the trial court]" (*Strang v Strang*, 222 AD2d 975, 979 [1995] [citations omitted]). The husband's counsel was hired as substitute counsel in April 2010, after the statement of net worth was filed, but his counsel did not file a retainer agreement until after Supreme Court ordered him to do so in September 2010. The record thus supports the court's determination that the husband's counsel failed to substantially comply with 22 NYCRR 1400.3 and is precluded from seeking a fee (*see Bentz v Bentz*, 71 AD3d 931, 931-932 [2010]).

Finally, "it is the responsibility of the party seeking the [qualified domestic relations order] to submit [such order] to the court on notice" (*Auriemmo v Auriemmo*, 87 AD3d 1090, 1091 [2011]). Accordingly, the order appealed from must be modified to direct that the husband shall submit a qualified domestic relations order to Supreme Court.

Rose, J.P., Stein and Spain, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by (1) providing that the parties' credit card debt consists of all those accounts for which statements were included in defendant's exhibit A, and that each party is responsible for one half of the balance due on these accounts as shown on the statements, (2) directing that payments of child support and maintenance shall be made through the Chemung County child support collection unit in such manner as the unit may direct, and (3) ordering plaintiff to submit a qualified domestic relations order to Supreme Court, and, as so modified, affirmed.

---

3. The wife asserts that such payment is no longer appropriate, as she is now exclusively self-employed and thus has no employer through which an income execution could be effected. However, this circumstance does not preclude her compliance with the stipulation by making her payments through the support collection unit (*see* Domestic Relations Law § 240 [2]; Social Services Law §§ 111-g, 111-h; CPLR 5242).