Button v Button (2018 NY Slip Op 07216)





 Button v Button


2018 NY Slip Op 07216


Decided on October 25, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 25, 2018

525739

[*1]JOLEEN MICHELE BUTTON, Respondent,
v
MICHAEL JOHN BUTTON, Appellant.

Calendar Date: September 14, 2018

Before: Egan Jr., J.P., Lynch, Devine, Clark and Rumsey, JJ.


Gordon Tepper & DeCoursey, LLP, Glenville (Jennifer P. Rutkey of counsel), for appellant.
Kriss, Kriss & Brignola, LLP, Albany (Dominick J. Brignola of counsel), for respondent.
Alexandra G. Verrigni, Rexford, attorney for the children.



MEMORANDUM AND ORDER
Rumsey, J.
Appeal from a judgment of the Supreme Court (Reilly Jr., J.), entered February 2, 2017 in Schenectady County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in October 2006 and are the parents of three children (born in 2012, 2013 and 2015). The wife moved with the children from the marital residence in April 2015 and commenced this action in June 2015. Supreme Court continued temporary orders of custody and child support that had been entered in Family Court. Following a three-day nonjury trial, at which the husband appeared pro se and the wife was represented by counsel, Supreme Court, among other things, granted the parties joint legal custody of the children, with the primary physical residence with the wife and parenting time for the father, equitably distributed the parties' marital property and directed the husband to pay biweekly child support in the amount of $525, biweekly maintenance in the amount of $550 and $7,500 of the wife's counsel fees. The husband appeals.
With respect to child custody and visitation, the husband argues that Supreme Court erred by reducing his parenting time with the children, requiring that he provide all transportation and by failing to provide specific times for holiday visits. We first note that it was unnecessary for Supreme Court to consider whether a change in circumstances had occurred because the temporary custody order was issued without the benefit of a full plenary hearing (see S.L. v J.R., 27 NY3d 558, 563-564 [2016]; Matter of Bessette v Pelton, 29 AD3d 1085, 1087 [2006]) and, further, did not address holiday and vacation schedules. Thus, Supreme Court had broad discretion to fashion an appropriate parenting schedule based on the best interests of the children (see DeSouza v DeSouza, 163 AD3d 1185, 1188 [2018]; see S.L. v J.R., 27 NY3d at 563).
The temporary custody order awarded the parties joint legal custody of the children with primary physical placement with the wife and parenting time to the husband on three consecutive weekends, with a Friday dinner visit in the fourth weekend of the four-week cycle and a dinner visit every Tuesday evening. The temporary order further required the parties to share transportation equally, but it provided no holiday schedule. Although Supreme Court reduced the husband's parenting time to alternating weekends and Tuesday dinner visits each week, it also provided him with four weeks of additional parenting time each year — two weeks in July and two weeks in August. The court also required the husband to provide all transportation to effectuate his parenting time and provided that the parties alternate seven specified holidays.
Since the wife and children left the marital residence, they have resided with the wife's parents — a 45-minute drive from the marital residence where the husband continues to reside. The wife did not have a vehicle and arranged for her transportation needs entirely by borrowing vehicles from her parents and a sibling. At the time of trial, the wife anticipated graduating from nursing school in May 2018 and obtaining full-time employment as a registered nurse, which she intended would enable her to obtain her own housing and a vehicle [FN1]. The parties agreed that since they separated, they had been able to cooperate regarding the children's needs and that both had been appropriately attentive to the children. Although Supreme Court reduced the husband's weekend visitation time, it also increased his parenting time by four additional weeks in the summer months and created a holiday schedule. Based on the foregoing, we find that Supreme Court's parenting time determination is supported by a sound and substantial basis in the record, except in two respects. In light of the 1½-hour round trip between the parties' residences, the requirement that the husband provide all transportation unduly impairs his mid-week dinner visit; thus, we modify the judgment to provide that the parties shall equally share transportation for the mid-week dinner visits. We also modify the holiday and vacation schedules to include exchange times, as follows: Christmas Eve shall begin at 6:00 p.m. on December 23 and end at 8:00 p.m. on December 24; Christmas Day shall begin at 8:00 p.m. on December 24 and end on December 26 at 8:00 a.m., when the Christmas vacation begins; all other holidays shall begin at 6:00 p.m. the day preceding the holiday and end at 8:00 a.m. the day after the holiday; and the winter and spring school vacations shall begin at the end of the last school day prior to the vacation period and shall end at 6:00 p.m. on the last day of the vacation period.
The husband also challenges Supreme Court's equitable distribution award. " Because Supreme Court has substantial discretion when making an equitable distribution award, we will not disturb its determination absent an abuse of discretion or failure to consider the requisite statutory factors" (Funaro v Funaro, 141 AD3d 893, 896 [2016] [internal quotation marks and citations omitted]). Although Supreme Court did not specifically identify any statutory factors that it may have considered, its factual findings reveal that it considered the statutory factors that are relevant in this case (see Noble v Noble, 78 AD3d 1386, 1387 [2010]; Rosenkranse v Rosenkranse, 290 AD2d 685, 686 [2002]).
In making its equitable distribution award, Supreme Court noted that the parties were relatively young — both were in their mid-30s — and in good health. They had been married for eight years when they separated and had three young children. The husband had been employed by New York since 2002 — four years prior to the marriage — and the wife had not been employed since the birth of the oldest child in 2012, when she became primarily responsible for the care of the children. Following the parties' separation, the wife enrolled in a nurse training program that Supreme Court found would substantially increase her future earning capacity. The court also noted that the parties had limited assets and substantial debts. The primary assets were the former marital residence, in which the parties stipulated that they had equity of $36,600, and the husband's defined benefit pension plan with New York. In addition to their mortgage loan, they [*2]had marital debt of approximately $47,612 [FN2]. The wife desired that the former marital residence be sold and the net proceeds used to reduce their substantial non-mortgage marital debt. The husband sought distribution of the former marital residence to himself. Supreme Court ordered that the house — with the associated mortgage loan indebtedness — and $40,106 of the marital debt be distributed to the husband and that the remaining marital debt of approximately $3,430 be allocated to the wife [FN3]. In addition, it ordered substantially equal distribution of the parties' personal property and, further, appeared to equally divide the marital portion of the husband's New York retirement according to the Majauskas formula.[FN4]
The husband contends that Supreme Court inappropriately burdened him with nearly the entirety of the marital debt. Upon consideration of the foregoing factors, we cannot say that Supreme Court's distribution of the marital home and the parties' debt is unjust or inequitable. The husband further argues that the court erred in ordering that he provide the wife with "the minimum survivor benefit" for his pension plan. We take judicial notice of the applicable rules of the New York State and Local Retirement System. A participant may designate a former spouse to receive a portion of the preretirement ordinary death benefit and may name others to receive the remainder of that benefit. However, only one beneficiary, or alternate payee, may be named for retirement benefits. We agree with the husband that it would be inequitable to require that he name the wife as a beneficiary of his retirement benefits and thereby preclude him from sharing those benefits with any other person, such as a subsequent spouse. In that regard, we note that the marital portion of the pension is small, the parties are relatively young and the wife has the prospect of gaining employment that should enable her to provide for retirement. Therefore, we modify the judgment by specifically awarding the wife one half of the martial portion of the husband's pension according to the Majauskas formula, including one half of the marital portion of the ordinary preretirement death benefit, but excluding any requirement that the husband elect any option that would continue postretirement benefits to the wife following his death.
The husband challenges the maintenance award as excessive. Viewing the record in its totality, we agree. " The purpose of maintenance is to provide financial support for the recipient spouse while he or she gains the skills and employment necessary to become self-sufficient" (McAuliffe v McAuliffe, 70 AD3d 1129, 1134 [2010] [internal quotation marks, brackets and citation omitted]; see McCaffrey v McCaffrey, 107 AD3d 1106, 1106 [2013]). "The determination of an appropriate maintenance award requires, among other things, a delicate balance of each party's needs and means or ability to pay" (McCaffrey v McCaffrey, 107 AD3d at 1107 [internal quotation marks, brackets and citations omitted])[FN5]. Although Supreme Court properly awarded maintenance to the wife — who had been the primary caretaker of the children since the birth of the oldest child — while she obtained training as a registered nurse that would [*3]allow her to obtain employment and become self-sufficient, the maintenance award must be reassessed in light of its failure to consider the wife's needs and the husband's ability to pay (see McAuliffe v McAuliffe, 70 AD3d at 1134). Our authority to determine issues related to maintenance is as broad as that of Supreme Court (see id. at 1135).
The record establishes that neither party could continue to enjoy the predivorce standard of living, which was sustained only by incurring substantial debt, and the parties' negative net worth established that they were in significant financial distress at the time of trial. The obligations imposed on the husband by the judgment total approximately $48,806 annually [FN6]. Payment of those obligations from his gross earnings of $73,083 would leave him with very little income to cover his own living expenses. At the time of trial, the wife's own living expenses were modest. She incurred no housing expenses because she and the children were residing with her parents, and she had no vehicle of her own. Thus, her direct expenses were limited to gas, food and clothing. Accordingly, we reduce the amount of the maintenance award to $200 biweekly, retroactive to the date of commencement of the action and continuing until July 1, 2018. The husband shall receive credit for maintenance actually paid. Any arrears shall be paid in biweekly installments of $200 commencing upon termination of maintenance.
The husband also challenges the child support award. As we have modified the maintenance award, we must recalculate the husband's child support obligation. The husband's gross income for child support purposes is $73,083, which, after deducting FICA and Medicare taxes of $5,591 and maintenance of $5,200, leaves $62,292. The wife was unemployed and had an annual income from maintenance of $5,200. Their combined income is $67,492 and their shares of the combined income are 92% for the husband and 8% for the wife. Thus, the presumptively correct amount of the husband's basic child support obligation for three children is $18,065 annually, or $694.81 biweekly (see Domestic Relations Law § 240 [1-b] [f]).
We must award the presumptively correct amount unless we find that it is unjust or inappropriate (see Domestic Relations Law § 240 [1-b] [f]). We have considered the factors enumerated in Domestic Relations Law § 240 (1-b) (f) and do not find that the husband's basic child support obligation — determined in accordance with the formula — is unjust or inappropriate. Accordingly, we award the wife child support in the presumptively correct amount of $694.81 biweekly, retroactive to the date of commencement of the action. We further direct that the parties share payment of the children's medical insurance premiums and unreimbursed medical, dental and ophthalmological expenses on a pro rata basis (see Domestic Relations Law § 240 [1-b] [c] [5] [i], [v]). In light of the termination of maintenance on July 1, 2018, child support must be adjusted accordingly. Following the termination of maintenance, the husband's gross income is $67,492, which is 100% of the parties' combined income, and, effective July 1, 2018, his child support obligation is $752.80 biweekly. Any arrears shall be paid in biweekly installments of $100 until maintenance arrears are paid and, thereafter, in biweekly installments of $300.
As a final matter, the husband argues that Supreme Court abused its discretion by awarding the wife $7,500 in counsel fees. We agree. "There [is] a rebuttable presumption that counsel fees shall be awarded to the less monied spouse" (Domestic Relations Law § 237 [a]). As aptly noted by Supreme Court, the marital debt exceeded the net value of the parties' assets; indeed, upon equitable distribution, each has a negative net worth. However, inasmuch as the husband was employed and the wife was unemployed while she completed her nursing education, Supreme Court properly found that the wife was the less monied spouse. Although the husband's income is greater than the wife's, his earnings are modest and are largely devoted to payment of maintenance, child support and marital debt. The fact of the matter is that neither party has sufficient assets or income for payment of counsel fees. Although an award of counsel fees to the wife was appropriate, upon consideration of the parties' financial circumstances, we [*4]reduce the award to $3,750 (see Blay v Blay, 51 AD3d 1189, 1193 [2008]; Walsh v Walsh, 92 AD2d 345, 347 [1983]). The husband's remaining contentions have been considered and found to lack merit.
Egan Jr., J.P., Lynch, Devine and Clark, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by (1) ordering that plaintiff and defendant shall equally share transportation for mid-week dinner visits, (2) modifying the holiday and vacation schedules to include exchange times, as set forth herein, (3) reversing so much thereof as awarded plaintiff a minimum survivor benefit in defendant's pension, and awarding plaintiff one half of the marital portion of defendant's pension, as set forth herein, (4) reducing plaintiff's biweekly maintenance award to $200, and as more specifically set forth herein, (5) increasing plaintiff's biweekly child support award to $694.81 and to $752.80 upon the termination of maintenance, (6) ordering the parties to share in the payment of the children's medical insurance premiums and unreimbursed medical, dental and ophthalmological expenses, and (7) directing defendant to pay $3,750 of plaintiff's counsel fees, and, as so modified, affirmed.



Footnotes

Footnote 1: We note that the parties and Supreme Court expected that the changes anticipated in the wife's circumstances during 2018 would likely result in further review of the custody and visitation provisions.

Footnote 2: This debt was comprised of: (1) a 2011 automobile loan balance of $4,000; (2) credit card debt in the husband's name of $31,584; (3) a personal loan balance of $3,472; (4) a loan from Becky Myer of $2,100; (5) a loan from the husband's pension of $4,076; and (6) credit card debt in the wife's name of $2,380.

Footnote 3: On appeal, the husband correctly notes that Supreme Court erred by failing to specifically classify the retirement loan of $4,076 as marital debt based on the wife's stipulation at trial that the proceeds from that loan were used toward the purchase of the marital residence. Thus, Supreme Court effectively distributed that debt entirely to the husband.

Footnote 4: Supreme Court specified that the husband's pension was "to be divided between the [wife] and the [husband] according to the Majauskas formula," but it did not specify the percentage of the marital share of the pension that was to be awarded to each party. It is apparent that Supreme Court and the parties have assumed that it was to be divided equally.

Footnote 5: The Domestic Relations Law was amended to provide a new formula-based method for calculating postdivorce maintenance awards for actions commenced on or after January 23, 2016. Inasmuch as this action was commenced prior to the effective date of the amendment, it is governed by the former provisions of Domestic Relations Law § 236 (B) (6) (see Stuart v Stuart, 155 AD3d 1371, 1372 n 2 [2017]).

Footnote 6: These annual obligations are comprised of maintenance of $14,300, child support of $13,650, premiums for family health insurance of $4,980 and payments on the marital debts that were distributed to him — excluding the mortgage on the former marital residence — of approximately $15,876.