Diop v Gueye (2025 NY Slip Op 01992)

Diop v Gueye

2025 NY Slip Op 01992

Decided on April 3, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 3, 2025

CV-24-0530
[*1]Thiane Diop, Respondent-Appellant,
v
Papa Iba Gueye, Appellant-Respondent.

Calendar Date:February 18, 2025

Before:Ceresia, J.P., Fisher, McShan and Mackey, JJ.

Hegge & Confusione, LLC, New York City (Michael Confusione of counsel), for appellant-respondent.
Vella Carbone & Vinson, LLP, Delmar (Jessica H. Vinson of counsel), for respondent-appellant.

McShan, J.
Cross-appeals from a judgment of the Supreme Court (Kevin Burke, J.), entered February 16, 2024 in Schenectady County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 2005 and have two children together, a daughter (born in 2009) and a son (born in 2015). The wife was born in 1983 and the husband was born in 1957. In 2019, the wife brought this action seeking to dissolve the parties' marriage and related relief. After a trial, Supreme Court granted the wife a divorce on the ground of the irretrievable breakdown of the marriage; declined to grant either spouse maintenance; awarded the husband $800 per month for child support;[FN1] ordered the sale of the marital residence and equally distributed the net equity upon the sale; awarded the wife 30% of the Majauskas share in the husband's retirement account; and divided certain marital debts on a 30% to 70% basis, with the husband paying the larger portion. These cross-appeals ensued.
We turn first to Supreme Court's equitable distribution award. The court "has substantial discretion to fashion such awards based on the circumstances of each case, and the determination will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors" (Breen v Breen, 222 AD3d 1202, 1206 [3d Dept 2023] [internal quotation marks and citations omitted]). "The statutory factors need not be specifically cited when the factual findings of the court otherwise adequately articulate that the relevant statutory factors were considered" (Kopko v Kopko, 229 AD3d 974, 978 [3d Dept 2024] [internal quotation marks and citations omitted], appeal dismissed 42 NY3d 1086 [2025]).
The husband contends that Supreme Court abused its discretion by ordering the sale of the marital home, suggesting that it would not be in children's best interest. We note that "there is a well-established preference for allowing the custodial parent to remain in the marital residence with the minor children of the marriage unless that parent can obtain comparable housing at a lower cost or is financially incapable of maintaining the marital residence, or either spouse is in immediate need of his or her share of the sale proceeds" (Sember v Sember, 72 AD3d 1150, 1151 [3d Dept 2010] [internal quotation marks and citation omitted]; see Albertalli v Albertalli, 124 AD3d 941, 943 [3d Dept 2015]). Nevertheless, we find that Supreme Court was within its discretion to consider the parties' entire financial situation, including the husband's ability to carry the costs of maintaining the marital home on his limited income alone, in determining that a sale of the property was appropriate (compare Cornish v Eraca-Cornish, 107 AD3d 1322, 1323 [3d Dept 2013]; Mosso v Mosso, 84 AD3d 757, 760 [2d Dept 2011]; Garges v Garges, 175 AD2d 511, 512 [3d Dept 1991]). We also disagree with the [*2]husband that the court should have credited him for payments made after the wife had vacated the home. We note that "[t]he use of separate funds [directed toward the] purchase [of] a marital asset does not mandate that a court give a credit, [as] the court may consider the use of separate property when exercising its discretion in arriving at an equitable distribution of that asset" (Beardslee v Beardslee, 124 AD3d 969, 969 [3d Dept 2015] [citations omitted]; accord Hughes v Hughes, 200 AD3d 1404, 1410 [3d Dept 2021]). In determining that she was entitled to half of the proceeds from the sale of the marital residence, the court properly accounted for the wife's efforts to maintain the home after the parties were married until she graduated college in 2012, as well as her financial contributions to the household after such time, and the court's determination clearly considered the entirety of the parties' assets in its decision (see Mack v Mack, 169 AD3d 1214, 1216 [3d Dept 2019]). Further, we find no abuse of discretion in Supreme Court's apportionment of the marital debts, which was proper under the circumstances, considering that the husband had retained the assets and furniture in the marital home that were associated with such debt (see Gordon-Medley v Medley, 160 AD3d 1146, 1148 [3d Dept 2018]; see also Lowe v Lowe, 123 AD3d 1207, 1209 [3d Dept 2014]).[FN2]
However, we find it appropriate to modify Supreme Court's distribution of the husband's retirement account based upon our review of the record. It is clear from the record that the husband worked in his teaching role prior to the marriage and, ostensibly, some percentage of the retirement asset was acquired prior to the marriage. Although Supreme Court properly noted that distinction, the documents reflecting the husband's retirement account at the time of commencement provide the total value of the asset and an estimate of monthly payments but are unclear as to the precise figure subject to distribution from the record before us. Further, with the information that we can discern from the record, we note that certain disbursements from the retirement account went toward paying for marital expenses. With all that in mind, the factors that Supreme Court considered in forgoing an award of maintenance are also relevant here. Specifically, the wife's age and her ability to advance in her career and increase her earnings as compared to the limitations on income placed on the husband based upon his retirement. Noting that the wife retained the entirety of her retirement account with her employer at the time of trial, and further acknowledging the division of marital debt, we find it appropriate to modify her Majauskas share of the husband's retirement account to 10%.[FN3]
With respect to Supreme Court's decision to decline an award of postdivorce maintenance to either party, we turn first to the court's discretionary decision to forgo imputing income to the husband based upon his past earnings. "A court [*3]is not bound by a party's representations of his or her finances and, instead, may exercise its considerable discretion to impute income to a party based upon, among other things, that party's education, employment history and demonstrated earning potential, and we defer to the trial court's underlying credibility determinations" (Breen v Breen, 222 AD3d at 1203-1204 [citations omitted]). There is no dispute that the husband was lawfully permitted to retire and, though that may have been ill advised under the circumstances, we do not find that he did so improperly. Considering the husband's continuing financial obligations and his retirement savings as modified, we find no reason to deviate from the determination not to impute any income to him (see id.; Macaluso v Macaluso, 145 AD3d 1295, 1296 [3d Dept 2016]; compare Johnson v Johnson, 172 AD3d 1654, 1656 [3d Dept 2019]).[FN4]
That being said, we note that Supreme Court failed to set forth the presumptive maintenance amount prior to articulating its rationale for declining to award maintenance to either party, as required by statute (see Domestic Relations Law § 236 [B] [5-a] [h] [2]; Kaufman v Kaufman, 131 AD3d 939, 940-941 [2d Dept 2015]). However, that error does not require that we remit the matter, as our own authority on maintenance is as broad as the trial court's (see Louie v Louie, 203 AD3d 1520, 1521 [3d Dept 2022]). Accepting Supreme Court's determination as to the income of the parties, as relevant here, the presumptive annual amount of maintenance due to the husband, as set forth under Domestic Relations Law § 236, is $8,593 (see Domestic Relations Law § 236 [B] [6] [b] [6]; [c] [1]).[FN5] Notably, "the determination of an appropriate maintenance award requires, among other things, a delicate balance of each party's needs and means or ability to pay" (McCaffrey v McCaffrey, 107 AD3d 1106, 1107 [3d Dept 2013] [internal quotation marks, brackets and citations omitted]). Contrary to the husband's contention, in assessing whether a deviation from the presumptive maintenance award is appropriate, it is fair to consider his choice to retire at the time of trial, particularly in light of his remaining financial obligations, including those associated with the care of his children. That being said, his choice to retire does not entirely limit him from supplementing his income without affecting his social security eligibility, as the husband acknowledged that he would be able to earn some income by lecturing or teaching in an adjunct role. Accordingly, considering the appropriate factors for deviating from the maintenance guideline obligation — particularly, the limited proof suggesting the need for more to enjoy the standard of living during the marriage, our modification to the equitable distribution of the husband's retirement account, the income available to him from social security and his ability to earn a limited amount of income from working in addition to such payments — we find that declining [*4]to award maintenance to the husband was not an abuse of discretion (see Domestic Relations Law § 236 [B] [6] [e] [1] [a], [b], [f], [k], [m], [o]).
For similar reasons, we find no abuse of discretion in Supreme Court's determination to deviate from the presumptive child support award. Having already determined that the court properly determined the parties' incomes, it was then required to "determine the basic child support obligation under the CSSA, and must then order the noncustodial parent to pay his or her pro rata share of the basic child support obligation, unless it finds that amount to be unjust or inappropriate" (Matter of Jennifer VV. v Lawrence WW., 183 AD3d 1202, 1204 [3d Dept 2020] [internal quotation marks and citations omitted]). In deviating from the presumptive child support award to the husband of approximately $1,400, the court noted the shared custodial schedule, the parties' expenses and the derivative social security benefits that the husband received for the children. These were all proper considerations underlying the deviation and, based upon consideration of the entirety of the parties' finances as modified in our decision, we discern no justification to find that Supreme Court abused its discretion (see Smith v Smith, 91 AD3d 1083, 1084 [3d Dept 2012]; Matter of Franklin v Franklin, 268 AD2d 814, 815 [3d Dept 2000]). We have examined the parties remaining contentions and find them without merit.
Ceresia, J.P., Fisher and Mackey, JJ., concur.
ORDERED that the judgment is modified, on the law and the facts, without costs, by awarding plaintiff 10% of defendant's retirement plan rather than 30%, and, as so modified, affirmed.

Footnotes

Footnote 1: As noted by Supreme Court, the parties stipulated to joint legal and physical custody of their two children.

Footnote 2: Supreme Court did not include any consideration of the wife's student loan debt in its distribution of the marital debts. Nevertheless, such debt, alongside other expenses that the wife had accumulated, such as her current car payment and credit card debt, appears to have factored into the court's equitable distribution of the parties' assets and its maintenance determination based on the court acknowledging such debts in its findings of fact.

Footnote 3: In his brief, the husband alludes to the existence of a pension that the wife has through her employment, however, the record contains no evidence of same. To that end, we note that the husband bore the burden of establishing the value of such an asset so that it could be considered as part of the court's equitable distribution (see Biagiotti v Biagiotti, 97 AD3d 941, 944 [3d Dept 2012]).
Footnote 4: The husband contends, in sum and substance, that Supreme Court should have determined that certain deposits made by the wife after the proceeding was commenced constituted income. However, Supreme Court clearly credited the wife's representation that those deposits reflected loans from friends and family rather than income, and we find no basis in the record to disturb its assessment (see Carter v Fairchild-Carter, 187 AD3d 1360, 1363 [3d Dept 2020]).

Footnote 5: "When the parties share physical custody, the court can determine the 'primary custodial parent' for purposes of the Child Support Standards Act (see Domestic Relations Law § 240[1-b] [hereinafter CSSA]) based upon the reality of the situation by determining who has physical custody of the children for a majority of the time" (Matter of Treglia v Varano, 222 AD3d 1299, 1300 [3d Dept 2023] [internal quotation marks and citations omitted]). However, where parties have equal physical custody, as is the case here, "the parent having the higher income . . . is deemed the noncustodial parent for child support purposes" (Matter of Smisek v DeSantis, 209 AD3d 142, 143 [2d Dept 2022], lv dismissed 39 NY3d 1095 [2023]; see Matter of Treglia v Varano, 222 AD3d at 1300; Matter of Laskowsky v Laskowsky, 187 AD3d 1342, 1343 [3d Dept 2020]).