■ VICTORIA M. ESPOSITO-SHEA, Respondent-Appellant, v BRYAN P. SHEA, Appellant-Respondent. [941 NYS2d 793]—

Kavanagh, J. Cross appeals from a judgment of the Supreme Court (Demarest, J.), entered August 22, 2011 in St. Lawrence County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.

After the parties married in 1991, defendant (hereinafter the husband) completed his studies in psychology and obtained his Ph.D. degree. During the marriage, plaintiff (hereinafter the wife), in addition to having two children, attended law school and earned a law degree. After this divorce action was commenced in December 2006, the wife passed the bar exam and received her license to practice law. After a trial, Supreme Court, among other things, awarded the husband $12,600—10% of the value it placed on the wife's law degree. The court also directed the husband to pay $1,200 a month in child support and decreed that he owed $17,363.51 in child support arrears dating back to when the divorce action was commenced. In addition, the court denied applications by the wife that she be awarded a distributive share of the husband's Ph.D. degree, and by the husband that the wife be removed as custodian of bank accounts held in trust for their children. The husband appeals and the wife cross-appeals.

The husband challenges Supreme Court's decision which, in effect, adopted the opinion offered by the wife's expert that placed the value on her law degree at $126,000. Specifically, he argues that since his expert's analysis was based in large measure on the wife's actual employment history, that analysis was more reliable, and the value of $252,617.82 that his expert placed on the degree should have been adopted by the court. Initially, we note that the valuation of a professional degree or

license is largely dependent upon expert testimony, and it is for the trial court to "evaluate this testimony, assign to it [the] weight the court believe[s] it deserve[s] and arrive at determinations that were supported by the credible evidence introduced at trial" (*Evans v Evans*, 55 AD3d 1079, 1080 [2008]). Moreover, the value to be placed on such an asset is directly related to the extent it serves to enhance a party's capacity to earn a living (*see McSparron v McSparron*, 87 NY2d 275, 280 [1995]; *O'Brien v O'Brien*, 66 NY2d 576, 588 [1985]; *Sadaghiani v Ghayoori*, 83 AD3d 1309, 1310 [2011]; *McAuliffe v McAuliffe*, 70 AD3d 1129, 1132 [2010]; *Brough v Brough*, 285 AD2d 913, 914 [2001]). Here, in analyzing the value of the law degree, both experts compared what they believed the wife should have been able to earn during the relevant time period with and without a law degree (*see Grunfeld v Grunfeld*, 94 NY2d 696, 701-702 [2000]; *McSparron v McSparron*, 87 NY2d at 286) and then factored the wife's work-life expectancy into the difference between these two figures to determine the extent to which the degree served to enhance her earning capacity.

The principal difference in the evaluations offered by both experts revolved around what each believed the wife's earning capacity would have been had she not obtained a law degree. The wife's expert focused on her actual employment history, as well as statistical data on what an individual with a Bachelor's degree could have earned in the area where she lived during the relevant time period, and concluded that, without a law degree, the wife would have had an annual earning capacity of $44,500. The husband's expert arrived at a significantly lower figure primarily because of the emphasis he placed on the wife's actual employment history in the period prior to obtaining her law degree. He assumed in his analysis that the wife would not have entered the work force until 2006, or after she was admitted to practice law, and that she would have continued to work as a clerk throughout this entire period, even though before attending law school she had obtained a Bachelor's degree and had been accepted into a doctoral program in Russian language and literature at Indiana University. He concluded, given this history and based on these assumptions, that the wife's potential earning capacity, even with a Bachelor's degree, would not have exceeded $22,827 per year.

Supreme Court rejected the opinion of the husband's expert and concluded, as did the wife's expert, that any reliable analysis of the wife's potential earning capacity had to assume that if she had not attended law school, she would have sought employment commensurate with her education and Bachelor's degree.

In our view, Supreme Court's conclusions in this regard were rationally based, and its decision to adopt the opinion of the wife's expert as to the value of her law degree was supported by credible evidence introduced at trial (*see Evans v Evans*, 55 AD3d at 1080).

The husband also maintains that he is entitled to more than a 10% distributive share of the law degree's value because the wife attended law school and earned her law degree while they were married. In that regard, "[a] nontitled spouse seeking a portion of the enhanced earning potential attributable to a professional license or degree of a titled spouse is required to establish that a substantial contribution was made to the acquisition of the degree or license" (*Sadaghiani v Ghayoori*, 83 AD3d at 1310; *see O'Brien v O'Brien*, 66 NY2d at 583-585; *McAuliffe v McAuliffe*, 70 AD3d at 1136; *Evans v Evans*, 55 AD3d at 1080; *Carman v Carman*, 22 AD3d 1004, 1005 [2005]; *Farrell v Cleary-Farrell*, 306 AD2d 597, 599 [2003]; *Brough v Brough*, 285 AD2d at 914). Moreover, "[w]here only modest contributions are made by the nontitled spouse toward the other spouse's attainment of a degree or professional license, and the attainment is more directly the result of the titled spouse's own ability, tenacity, perseverance and hard work, it is appropriate for courts to limit the distributed amount of that enhanced earning capacity" (*Evans v Evans*, 55 AD3d at 1080-1081 [internal quotation marks and citations omitted]).

The husband maintains that he is entitled to a greater degree of the value of the wife's law degree because he was the family's primary wage earner during the parties' marriage and arranged his work schedule so that he could care for their children while the wife attended law school. However, these sacrifices represented " 'overall contributions to the marriage rather than an additional effort to support [the wife] in obtaining [her] license' " (*Evans v Evans*, 55 AD3 at 1081, quoting *Carman v Carman*, 22 AD3d at 1007). In addition, the wife's own efforts in obtaining her law degree cannot be minimized. For example, she worked in part-time positions throughout the marriage and was employed during the summer months while attending law school. She earned merit scholarships and paid a significant part of her law school tuition with an inheritance she received during the marriage. Under the circumstances, it cannot be said that Supreme Court abused its discretion in limiting the husband's distributive share of the wife's law degree to 10% of its overall value (*see Carman v Carman*, 22 AD3d at 1007; *Farrell v Cleary-Farrell*, 306 AD2d at 599-600; *Brough v Brough*, 285 AD2d at 916).

We reach a similar conclusion as to the wife's claim that she should share in the value of the husband's Ph.D. degree. The husband had satisfied most of the requirements he needed to obtain this degree before the parties married and paid for it while providing financial support for his family. What assistance the wife may have provided in aiding him in acquiring this degree was simply not so significant or unique as to warrant awarding her a distributive share of its value.

The husband also claims that Supreme Court erred by requiring him to pay child support from the date the divorce action was commenced. Domestic Relations Law § 236 (B) (7) (a) states that an order of child support "shall, except as provided for herein, be effective as of the date of the application therefor, and any retroactive amount of child support due shall be support arrears/past due support and shall be paid in one sum or periodic sums, as the court shall direct, taking into account any amount of temporary child support which has been paid." Since the wife, in her complaint, sought child support, and temporary child support was sought during pendancy of action, the court appropriately found that the husband's obligation to pay child support began on the date the action for divorce was commenced. We also note that Supreme Court took into account payments the husband made for child support during the relevant time period in calculating the amount he owed in arrears (*see Burns v Burns*, 84 NY2d 369, 377 [1994]; *Ungar v Savett*, 84 AD3d 1460, 1461-1462 [2011]).

Finally, we see no reason to disturb Supreme Court's decision to allow the wife to remain as custodian of the children's financial accounts. Her withdrawal of funds from an account to pay for a child's school expenses was authorized by Supreme Court, and other allegations made by the husband that the wife mismanaged these accounts are not supported by credible evidence in the record.

Spain, J.P., Malone Jr., McCarthy and Egan Jr., JJ., concur. Ordered that the judgment is affirmed, without costs.