OPINION OF THE COURT
Stephen D. Aronson, J.
This decision holds that in the absence of some other compelling factor, where a noncustodial parent’s child spends 33% to 40% of the time with that parent, a deviation in child support from the presumptively correct amount is not warranted.
The petitioner T.M. (petitioner or mother) and the respondent J.K. (respondent or father) are the biological parents of one child, T.K., born xx/xx/2001. The mother filed a petition seeking child support, and a hearing was held on May 2 and 24, 2016. Following the hearing, the Support Magistrate issued findings of fact dated June 15, 2016, resulting in an order dated August 1, 2016. The Support Magistrate concluded that the respondent’s biweekly support obligation according to the Child Support Standards Act (CSSA) is $396. However, the Support Magistrate also found the application of the CSSA to be inappropriate based upon his conclusion that the child spends at least 35% to 40% of the time with respondent, stating, “This constitutes a significant time sufficient to justify deviation from the Act.”
The petitioner filed objections on August 26, 2016, alleging, in words or substance: there is a significant discrepancy in the parties’ financial resources; the Support Magistrate’s allocation of time with each parent was misplaced; and reliance by the Support Magistrate upon spending daytime hours was misplaced under Bast v Rossoff (91 NY2d 723 [1998]), and Matter of Somerville v Somerville (5 AD3d 878 [3d Dept 2004] [holding that allowing a downward modification based on the number of daytime hours spent with the child bears no logical relation to the purpose behind child support awards]). The respondent filed a response to the objections on September 9, 2016. He contends, in words or substance: the Support Magistrate followed the directives of Bast; the Support Magistrate correctly determined that the amount of support was unjust and inappropriate; petitioner’s reliance on Somerville was misplaced; and the Support Magistrate’s calculation of the time spent with the child by each parent was correctly determined.
*197 Analysis
In making a child support award, the support magistrate must initially determine the basic child support obligation under the CSSA and must then order the noncustodial parent to pay his or her pro rata share of the basic child support obligation unless it finds that amount to be unjust or inappropriate (Bast v Rossoff, 91 NY2d at 727). Here, the Support Magistrate concluded that the respondent’s net biweekly support obligation according to the CSSA was $396. The parties do not dispute this calculation (however, this court finds that this amount is incorrect). The petitioner disputes the Support Magistrate’s reduction of biweekly child support by $126 to $270.
Under the law, the court may depart or vary from the statutory guidelines based on a finding that the noncustodial parent’s pro rata share of the basic child support obligation is unjust or inappropriate (Domestic Relations Law § 240 [1-b] [f|). In order to deviate from the statutory formula, the court must specifically set forth the factors it considered and the reasons that it did not order the basic child support obligation (Family Ct Act § 413 [1] [g]). Such a finding must be based upon consideration of the factors enumerated at Domestic Relations Law § 240 (1-b) (f).
Here, the Support Magistrate mentioned all of these factors in the findings of fact but did not explain the factual basis underlying each factor. The petitioner asserts, in words or substance, that the record demonstrates that the Support Magistrate was not justified in reaching his conclusions. Specifically, she contends that the respondent has more disposable income, fewer expenses, and more resources. She also asserts that she has more debt, including a credit card balance (consisting of charges needed to cover her expenses) and a large school loan. She brought out on cross-examination that the respondent paid no child support (apparently by agreement) from 2006 through 2015.
The petitioner’s arguments are compelling. Her financial disclosure affidavit shows that she has student loans totaling $35,865, requiring a monthly payment of $300, and a $9,000 credit card balance requiring a monthly payment of $420. The testimony at the hearing showed that the respondent is able to bank 10% of his earnings in a 401(k) plan. The respondent’s financial disclosure affidavit shows a 401(k) balance of $210,000, a direct market access account balance of $29,000, *198 and an IRA balance of $20,000. Additionally, his gross income is $78,000, and petitioner’s is $72,092.80.
Upon a review of the objections and the rebuttal, this court may (i) remand one or more issues of fact to the support magistrate, (ii) make his or her own findings of fact and order, with or without holding a new hearing, or (iii) deny the objections (Family Ct Act § 439 [e]). Deference should be given to the decision of the support magistrate, who is in the best position to assess credibility of the witnesses and evidence proffered (Matter of Manocchio v Manocchio, 16 AD3d 1126 [4th Dept 2005]). Here, the only disputed testimony is related to the time each parent spent with the child. This issue was fully developed by the testimony and evidence submitted by the parties. The outcome advocated by the father does not significantly vary from the outcome advocated by the mother. Nevertheless, a family court can properly make its own findings of fact even though the findings may be contrary to the findings of the support magistrate (Matter of Hughes v Wasik, 224 AD2d 982 [4th Dept 1996]). Here, this court elects to make new findings of fact and issue an order without holding a new hearing.
Findings of Fact
1. The petitioner mother is the party with primary physical residence of the child. The parties entered into a consent agreement in August 2011 establishing custody and visitation. The parties agreed to joint custody, with primary physical residence to petitioner. Respondent’s basic visitation schedule consisted of three weekends per month, one night during the week (as agreed), and holidays and vacations (as agreed). For the 2015 calendar year, the evidence (particularly, respondent’s exhibit A) showed that the child spent about 33.74% of all hours with the father, and thus the child spent about 66.26% of all hours with the mother. Respondent’s exhibit A also showed that the child spent “40.27% of all days” with the father, but this percentage is skewed because some of the “days” were not overnights. Courts have declined to accord greater weight to the custodial days as compared to the overnight custodial periods (see Somerville at 880; Matter of Mitchell v Mitchell, 134 AD3d 1213, 1215 [3d Dept 2015]). Clearly, the petitioner is the party with primary physical residence of the child.
2. Petitioner’s annual gross income from all sources is $72,092.80. After deduction of Social Security and Medicare tax, petitioner’s net income for child support purposes is $66,578.
*199 3. Respondent’s annual gross income from all sources is $78,000. After deduction of Social Security and Medicare tax, respondent’s net income for child support purposes is $72,033.
4. The combined parental income is $138,611. Petitioner’s income represents 48%; respondent’s income represents 52%.
5. According to the CSSA, the support obligation for one child based on the combined parental income is $23,563.87. Respondent’s 52% share of the support obligation is $12,253.21 per year, or $471 biweekly.
6. Respondent provides health and dental insurance coverage for the child. The difference between family coverage and individual coverage for health and dental insurance is $159.18 per month {see respondent’s exhibit J). Petitioner’s 48% share of the cost of health and dental insurance is $76.40 per month or $35 biweekly.
7. Respondent’s net CSSA biweekly support obligation is $436. (The Support Magistrate concluded that the biweekly support obligation is $396 by erroneously subtracting the monthly health care premium instead of the biweekly health care premium from the respondent’s biweekly basic child support obligation.)
8. In determining whether there should be a deviation from this amount, the following factors are considered:
a. The Financial Resources of the Custodial and Noncustodial Parent, and Those of the Child
The petitioner is employed by R.G.H.S., and her gross annual income is $72,092.80. The respondent is employed by IEC E. Corp., and his annual gross income is $78,000. The petitioner testified that her husband is employed but does not contribute to the expenses listed in her financial disclosure affidavit; this testimony was not disputed by the respondent. The only evidence about the financial resources of the child was the fact that the mother sets aside $50 per month in a 529 college savings plan for him.
b. The Physical and Emotional Health of the Child and His or Her Special Needs and Aptitudes
The child appears to be physically and emotionally well, with no special needs and aptitudes except that his involvement in sports requires expenditures for athletic clothing, equipment, and fees. There was evidence about the father’s contribution to these expenses (respondent’s exhibit H) without contribution by the mother; however, it is well settled that the costs of *200 maintaining suitable housing and providing food and clothing for the child during custodial periods do not constitute extraordinary expenses that would justify a deviation from the statutory formula (Riemersma v Riemersma, 84 AD3d 1474, 1477 [3d Dept 2011]; Matter of Ryan v Ryan, 110 AD3d 1176, 1180 [3d Dept 2013]).
c. The Standard of Living the Child Would Have Enjoyed Had the Marriage or Household Not Been Dissolved
There was no evidence adduced about this factor. However, the evidence showed that the child enjoys an above-average standard of living as a result of the efforts of both parents.
d. The Tax Consequences to the Parties
Child support will not be tax includable to the mother, nor will it be tax deductible to the father. There was no evidence about which parent claims the child as a dependency exemption for state and federal income tax purposes. Both parents shelter their income to a certain degree; more so by the father (IRA and 401[k] plan) than the mother (a 529 college savings plan).
e. The Nonmonetary Contributions That the Parents Will Make Toward the Care and Well-Being of the Child
Both parents appear to be exemplary parents, vital to the growth and development of the child. Both parents see that the child goes to school, is engaged in suitable activities, attends medical and dental appointments, and gets transportation assistance from his paternal grandmother.
f. The Educational Needs of Either Parent
Although there was no evidence of when the mother attended school, there was evidence that she has student debt totaling $35,865, requiring a monthly payment of $300.
g. A Determination That the Gross Income of One Parent is Substantially Less than the Other Parent’s Gross Income
The father’s gross income is $78,000, and the mother’s gross income is $72,092.80. Thus, the mother’s gross income is not substantially less than the father’s gross income. In a case where the custodial parent’s annual gross income was approximately $37,000 more than the noncustodial parent’s annual gross income, the appellate court held that this disparity alone was sufficient to warrant a deviation (Riemersma v Riemersma, 84 AD3d 1474, 1477 [3d Dept 2011]). No such disparity in annual gross incomes appears in this case.
*201 h. The Needs of the Children of the Noncustodial Parent for Whom the Noncustodial Parent is Providing Support Who are Not Subject to the Instant Action
There was no evidence that there are any such children.
i. Provided That the Child is Not on Public Assistance, Extraordinary Expenses Incurred by the Noncustodial Parent in Exercising Visitation or Expenses Incurred by the Noncustodial Parent in Extended Visitation if the Custodial Parent’s Expenses are Substantially Reduced as a Result Thereof
There was no evidence that the child is on public assistance. The father claimed certain expenses incurred relating to his exercising visitation (respondent’s exhibit H). In summation, he claimed a total of $3,516.93 in expenses for 2015, consisting of $505.06 for clothing, $539.22 for health/beauty, $550.68 for out-of-pocket medical, $306.35 for gifts, $766.07 for school expenses, $351.34 for school sports, $93.37 for the mother, and $405.54 for recreation. Expenses incurred in exercising visitation for housing, food and clothing are not considered a basis for authorizing a deviation (Riemersma). The cost of entertainment is not an extraordinary visitation expense for purposes of calculating child support (Matter of Pandozy v Gaudette, 192 AD2d 779 [3d Dept 1993]). Out-of-pocket medical expenses will now be shared on a pro rata basis by both parents in proportion to their respective incomes. I would also conclude that the remaining expenses itemized by the father on respondent’s exhibit H are not extraordinary.
j. Any Other Factors the Court Determines are Relevant in Each Case
The respondent urges that a deviation in the amount of his child support obligation is warranted under the circumstances of this case, particularly when the Support Magistrate concluded that his basic child support obligation was unjust and inappropriate based upon the time the child spent with his father.
Child support in a shared custody case should be calculated as it is in any other case (Bast v Rossoff). In other words, the trial court must complete the three-step method for determining the basic child support obligation; the trial court must then order the noncustodial parent to pay a pro rata share of the basic child support obligation, unless it finds that amount to be unjust or inappropriate based on a consideration of the paragraph (f) factors (Bast at 726, 727). In the Bast decision, *202 Judge Wesley, speaking for a unanimous Court of Appeals, considered and rejected the notion of adopting a proportional offset formula (Bast at 730). Under the proportional offset formula, each parent’s pro rata share of the basic child support obligation is multiplied by the percentage of time the child spends with the other parent. The two resulting amounts are then offset against each other, and the net is paid to the parent with the lower amount (Bast at 730). Although the Support Magistrate in this case did not state that he employed a proportional offset formula, it is clear from his findings of fact that he based his decision solely on the ground that the child spends 35% to 40% of the time with the noncustodial parent, constituting a significant amount of time sufficient to justify a deviation. In making this conclusion, the support magistrate reduced the respondent’s child support obligation from $396 biweekly to $270 biweekly. This was more like employing a proportional offset methodology and randomly coming up with a reduction of child support based solely on the amount of time the child spent with the father and less like an analysis of whether the basic child support obligation is unjust and inappropriate. In my view, in shared custody cases, the amount of time the child spends with the noncustodial parent is not the driving force for a deviation. (See e.g. Matter of Ryan v Ryan, 110 AD3d 1176 [3d Dept 2013] [rejecting reduction of a parent’s child support obligation based upon the amount of time spent with the noncustodial parent]; Matter of Mitchell v Mitchell, 134 AD3d 1213 [3d Dept 2015] [rejecting the notion that significant expenses during extensive visitation permits a deviation]; Matter of Somerville v Somerville, 5 AD3d 878 [3d Dept 2004] [court rejected a deviation where parent claimed he had physical custody of the child during most of her waking hours]; Rubin v Della Salla, 107 AD3d 60 [1st Dept 2013] [overnight hours given preference to daytime hours; an hour-by-hour analysis is not workable]; Riemersma v Riemersma, 84 AD3d 1474, 1477 [3d Dept 2011] [a $37,000 difference in parental income, standing alone, is sufficient to warrant a deviation from the presumptively correct amount but significant custodial time does not warrant deviation].)
Therefore, in the absence of some other compelling factor, where the child spends 33% to 40% of the time with the noncustodial parent, a deviation in child support from the presumptively correct amount is not warranted.