■ ELISA BALL, Appellant-Respondent, v LAWRENCE E. BALL, Respondent-Appellant. [56 NYS3d 583]—

Lynch, J. Cross appeal from a judgment of the Supreme Court (Mott, J.), entered October 16, 2015 in Ulster County, granting, among other things, equitable distribution of the parties' marital property, upon a decision of the court.

Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1992 and have four children (born in 1993, 1999, 2003 and 2007). The wife moved out of the marital home in March 2013 and commenced this action for a divorce in May 2013 seeking joint custody of the minor children, child and spousal support, equitable distribution of marital property and counsel fees. The husband answered and counterclaimed for custody, child support and equitable distribution. Supreme Court issued a pendente lite order awarding child support payable by the wife to the husband and spousal support payable by the husband to the wife in nearly equal amounts, thus neither party was obligated to pay support to the other. The court, after a hearing, also issued a temporary custody order granting the parties joint legal custody with primary physical custody to the husband and parenting time to the wife three days each week with an alternating fourth day every two weeks. The court also awarded the wife parenting time during two three-week periods in the summer. In August 2014, parenting time was modified to provide that "the wishes of the minor child [born in 1999] to remain with one parent or the other shall not be withheld by either party." Further, the parties agreed during the proceeding to alternate parenting time during the summer biweekly.

Following a nonjury trial, Supreme Court issued a judgment of divorce which, as relevant here, granted the parties joint

legal custody with the husband having primary physical custody of the three minor children "with the parties to share physical custody . . . as set forth in the temporary custody orders." The wife was awarded retroactive and continuing child support, expert and counsel fees and the ability to declare one of the children as a dependent for tax purposes. Each party was denied a distributive award based on the other's enhanced earnings. Both parties now appeal.

Initially, while neither party challenges Supreme Court's allotment of parenting time, the mother challenges the court's designation of the father as the "primary" custodian. Where, as here, the parties share physical custody, the court can determine the "primary custodial parent" for purposes of the Child Support Standards Act (*see* Domestic Relations Law § 240 [1-b] [hereinafter CSSA]) "based upon the reality of the situation by determining who has physical custody of the children for a majority of the time" (*Riemersma v Riemersma*, 84 AD3d 1474, 1476 [2011] [internal quotation marks and citations omitted]; *see Bast v Rossoff*, 91 NY2d 723, 728 [1998]). If parenting time is shared equally, the noncustodial parent for purposes of the CSSA is the parent with the greater income (*see Matter of Mitchell v Mitchell*, 134 AD3d 1213, 1214 [2015]). Here, the temporary order held that the parties shared parenting time "on an approximate 50-50 basis" and Supreme Court ordered that parenting time continue in this manner. In the judgment of divorce, the court continued this custodial order but, when calculating child support, recognized the husband's greater income and concluded that, based upon "the near[ ] equal division of custodial time," the wife was entitled to child support. Based on the court's findings with regard to the parenting schedule, which neither party challenges, we find that Supreme Court should not have concluded that the husband was the primary custodial parent (*see Shamp v Shamp*, 133 AD3d 1213, 1214-1215 [2015]). Further, because the court effectively and properly deemed the husband to be the noncustodial parent based on his greater income (*see Matter of Mitchell v Mitchell*, 134 AD3d at 1216), we find that, on this record, it was harmless error. Nevertheless, we modify the judgment accordingly.

Next, both parties challenge Supreme Court's determination with regard to child support. When calculating a party's child support obligation in a shared custody situation, the court must employ the three-step framework of the CSSA (*see Bast v Rossoff*, 91 NY2d at 726; *Matter of Ross v Manley*, 135 AD3d 1104, 1106 [2016]). First, the court must calculate the parties combined parental income pursuant to Domestic Relations Law

§ 240 (1-b) (b) (5) (i). Second, that amount, up to the statutory cap, is multiplied by the specified percentage based upon the number of children (*see* Domestic Relations Law § 240 [1-b] [b] [3] [i]; [c] [2], [3]). That sum is then allocated in accordance with each parent's pro rata share of the combined parental income (*see* Domestic Relations Law § 240 [1-b] [b] [3] [iii]; *Bast v Rossoff*, 91 NY2d at 726-728). Third, where, as here, the combined parental income exceeds the statutory cap, the court must "determine the amount of child support for the amount of the combined parental income in excess of such dollar amount through consideration of the factors set forth in [Domestic Relations Law § 240 (1-b) (f)] and/or the child support percentage" (Domestic Relations Law § 240 [1-b] [c] [3]; *see Holterman v Holterman*, 3 NY3d 1, 11 [2004]; *Bast v Rossoff*, 91 NY2d at 727; *Vantine v Vantine*, 125 AD3d 1259, 1262 [2015]). Put differently, the court must apply either the percentage or statutory factors to the excess income, "or some combination of the two" and, "[i]n doing so, the trial court must set forth a record articulation for deviating or not deviating from the statutory guideline and relate that articulation to the statutory factors" (*Moschetti v Moschetti*, 277 AD2d 838, 839-840 [2000]; *see Petersen v Petersen*, 125 AD3d 1234, 1235 [2015]).

Here, Supreme Court determined that the parties combined parental income was $203,400 and the statutory cap, at the time, was $141,000 (*see* Domestic Relations Law § 240 [1-b] [c] [2]). After applying the statutory percentage to the statutory cap, the court determined that the presumptive amount of child support was $40,890, that the husband's share of that amount—68%—yielded monthly child support in the amount of $2,317.10 and that the wife's share—32%—yielded monthly child support in the amount of $1,090.40.[1] Next, the court applied the statutory percentage against the combined earnings in excess of the statutory cap and calculated the additional child support on the excess income to be $18,096, with the husband's pro rata share to be $1,025.40 each month and the wife's to be $482.60 each month. After completing these calculations, Supreme Court determined that the husband—"[a]s the monied spouse and the non-custodial parent for purposes of child support during the period prior to trial"—was obligated

---

1. Supreme Court applied the statutory percentage applicable to three children, not four, even though the oldest child was under the age of 21 during at least part of the time period that the action was pending, and there was neither a claim nor any evidence that the oldest child was emancipated (*see Decker v Decker*, 148 AD3d 1272, 1275 [2017]). Nevertheless, because no party challenges the court's determination to deem the oldest child as emancipated, we abide that conclusion.

to pay child support in the amount of $2,317.10 for the period between the date that the wife first sought support and the date that the custody order was modified.[2] Prospectively, the court awarded the wife $1,158.55 each month, "represent[ing] fifty per cent of the [h]usband's child support obligation." The court declined to award any child support based on the combined parental income in excess of the statutory cap, because it was "unnecessary," based on the application of certain factors.

Initially, we agree with the wife's argument that Supreme Court's calculation of child support was incorrect and that a modification of the husband's support obligation is necessary. First, as to the combined parental income in excess of the statutory cap, Supreme Court determined to award no support because: (1) based on the equitable distribution award, the husband would be responsible for paying a mortgage; (2) the husband supported the oldest child; (3) the husband paid for the children's health insurance; (4) each party could claim a tax deduction; and (5) "the record reflects that both parents are . . . willing to contribute the amount of their respective child support obligations, and to maintain appropriate accommodations for their children at their respective residences." For these same reasons, the court concluded that its child support award was "just and appropriate."

We are mindful that Supreme Court had the discretion to deviate from the statutory formula (*see Matter of Cassano v Cassano*, 85 NY2d 649, 655 [1995]; *Matter of Marcklinger v Liebert*, 88 AD3d 1114, 1115 [2011]). Here, however, the cited factors are either unrelated to the statutory factors or fail to support Supreme Court's implicit determination that application of the statutory percentage or the statutory factors to the income in excess of the statutory cap was unjust or inappropriate. Further, the cited factors fail to support the court's determination to reduce the husband's support obligation by one-half prospectively. For example, while the court emphasized the husband's obligation to pay the mortgage on his home and the parties' apparent ability to maintain appropriate residences, the costs associated with providing shelter, food and clothing to children while exercising parenting time are not factors that justify a deviation (*see Matter of Mitchell v Mitch-*

---

**2.** This 13-month period begins on July 26, 2013 and extends until August 19, 2014, which is the day that Supreme Court conducted a *Lincoln* hearing with the child born in 1999. The record does not include a modified custody order, and there is no evidence with regard to whether there was any change to the parenting time following the *Lincoln* hearing.

*ell*, 134 AD3d at 1215-1216; *Riemersma v Riemersma*, 84 AD3d at 1477). Importantly, the CSSA applies where there is shared custody "to assure that children will realize the maximum benefit of their parents' resources and continue, as near as possible, their preseparation standard of living in *each* household" (*Baraby v Baraby*, 250 AD2d 201, 204 [1998] [emphasis added]). In short, shared parenting does not automatically justify a deviation from a party's presumptive child support obligation (*see Arthur v Arthur*, 148 AD3d 1254, 1257 [2017]). Further, the court did not order the husband to provide health insurance to the minor children (*see* Domestic Relations Law § 240 [1] [c] [1]; [1-b] [c] [5]). Similarly, there was no order obligating the husband to support the oldest child while she was a minor (*see e.g.* Domestic Relations Law § 240 [1-b] [c] [7]), and, while the husband may have been entitled to a credit for certain payments, neither the court nor the parties included the oldest child when calculating the presumptive amount of child support (*see Matter of Levy v Levy*, 52 AD3d 717, 718-719 [2008]). Further, the husband never sought contribution from the wife for these expenses.

In our view, applying the facts in this record to the factors set forth in Domestic Relations Law § 240 (1-b) (f), the result is either neutral or favors the wife. For example, the husband's income was more than twice that of the wife and was expected to increase (*see* Domestic Relations Law § 240 [1-b] [f] [1], [7]); there was testimony that all the children were involved in sports, a tutor was engaged for one child and these expenses can be expected to increase as they grow older (*see* Domestic Relations Law § 240 [1-b] [f] [2]); the children should not have to experience a markedly reduced standard of living during the wife's parenting time (*see* Domestic Relations Law § 240 [1-b] [f] [3]); and the husband is entitled to claim a tax deduction for two children while the wife claims one (*see* Domestic Relations Law § 240 [1-b] [f] [4]). Based on the foregoing, we find that the wife was entitled to an award of child support equal to the husband's share of the presumptive amount with no reduction. Further, for the same reasons, we find that, while application of the statutory percentage to all of the combined parental income in excess of the statutory cap would yield an unjust and unreasonable result, the husband is obligated to pay his pro rata share of the child support percentage up to the first $170,000 of combined parental income, or $2,835 each month, retroactive to the date that the mother applied for such relief

(*see* Domestic Relations Law § 240 [1] [j]).³ The husband may, however, take a credit both retroactively and prospectively for the wife's share (32%) of the cost of the minor children's health insurance coverage. In light of this child support award, we reject the wife's argument that Supreme Court's determination with regard to the husband's ability to declare two of the children as tax exemptions was an abuse of discretion (*see Quinn v Quinn*, 61 AD3d 1067, 1070 [2009]).

We turn next to the wife's claim that she was entitled to a distributive share of the husband's enhanced earnings as a judge and the husband's claim that he was entitled to a distributive share of the wife's Master's degree. The equitable distribution law "recognizes that spouses have an equitable claim to things of value arising out of the marital relationship and classifies them as subject to distribution by focusing on the marital status of the parties at the time of acquisition" (*O'Brien v O'Brien*, 66 NY2d 576, 583 [1985]). Thus, in determining the distribution of marital property, courts must consider "any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party" (Domestic Relations Law § 236 [B] [5] [d] [7]).⁴ This has been interpreted to mean that "an interest in a profession or professional career potential is marital property which may be represented by direct or indirect contributions by the non-title-holding spouse" (*O'Brien v O'Brien*, 66 NY2d at 584) and, thus, subject to inclusion in a distributive award (*see* Domestic Relations Law § 236 [B] [5] [e]). In certain cases, where "[a spouse's] contributions and efforts le[ad] to an increase in the value of [the other spouse's] career, this appreciation [is] a product of the marital partnership, and, therefore, marital property subject to equitable distribution" (*Elkus v Elkus*, 169 AD2d 134, 135 [1991], *lv dismissed* 79 NY2d 851 [1992]).

Here, the husband earned his law license prior to the marriage and worked as a lawyer from 1989, first as an associate and partner in a small firm and then as a solo practitioner. In

---

**3.** The wife sought child support retroactive to July 26, 2013. To the extent that Supreme Court's judgment can be read to relieve the husband of his child support obligations for a period beginning August 19, 2014 and extending to May 11, 2015, this was error.

**4.** Effective January 23, 2016, this provision was amended to add that "[t]he court shall not consider as marital property subject to distribution the value of a spouse's enhanced earning capacity arising from a license, degree, celebrity goodwill, or career enhancement" (L 2015, ch 269, § 2).

2007, he began working as a part-time City Court Judge until 2010, when he gave up his practice to start a 10-year term as a full-time City Court Judge. In support of her claim that she is entitled to an equitable share of the full-time judgeship, the wife presented testimony by Vincent Pangia, who testified that the present value of the husband's enhanced earnings resulting from the judgeship was $188,000 if he completed his present term and $440,000 if he was elected to a second 10-year term. The wife testified, and the husband did not dispute, that she was actively involved in the husband's campaign election and engaged in other political activities prior to his campaign to ensure that the full-time judgeship was an available elective position in 2010.

In our view, Supreme Court properly declined to award the wife a distributive award based on the husband's judgeship because the position does not constitute marital property subject to equitable distribution (*see West v West*, 213 AD2d 1025, 1026 [1995], *lv dismissed* 86 NY2d 885 [1995]). Without diminishing either the husband's professional accomplishments or the wife's contributions thereto, the election to a judicial position is not like a license or degree that enables a person to engage in a certain, presumably more lucrative career (*see O'Brien v O'Brien*, 66 NY2d at 584), nor can it be characterized as "celebrity goodwill" (*see Elkus v Elkus*, 169 AD2d at 139-140). The record confirmed that the husband happened to earn more money as a full-time City Court Judge than he did while he was engaged as a solo practitioner. This, however, does not resolve the issue because proof of increased wages is not analogous to an increase of wage-earning capacity (*see Sterling v Sterling*, 303 AD2d 290, 290-291 [2003]). In our view, the law degree and license that permitted the husband to become a City Court Judge are the property that enhanced his earnings capacity and both were earned prior to the marriage (*see Spence v Spence*, 287 AD2d 447, 448 [2001], *lv dismissed* 97 NY2d 725 [2002]).

We also find that Supreme Court properly rejected the husband's claim to a distributive share of the wife's Master's degree, which was earned during the marriage. During the trial, the husband's expert opined that the value of the degree and teaching certificate was $178,000. In order to share in the enhanced earnings attributable to a degree, the husband was required "to establish that a substantial contribution was made to the acquisition of the degree or license" (*Esposito-Shea v Shea*, 94 AD3d 1215, 1217 [2012] [internal quotation marks and citation omitted]). To assess whether a spouse's contribu-

tion was substantial, "we consider, among other things, whether that spouse altered his or her schedule and/or took on additional household duties that he or she would not have otherwise performed, in order to enable the titled spouse to obtain the license or degree" (*Quarty v Quarty*, 96 AD3d 1274, 1277 [2012]). The wife completed her degree part time over a period of years during the evening and on weekends. The wife's father paid the wife's tuition and, while the husband testified that he cared for the children in the evenings while the mother was at class, this cannot be said to be a duty he would not have otherwise performed. Under the circumstances, we are unable to conclude that Supreme Court's determination that the husband was not entitled to a share in the value of the wife's Master's degree was an abuse of discretion (*see Evans v Evans*, 55 AD3d 1079, 1081 [2008]).

Next, the wife contends that Supreme Court should have equitably distributed certain credit card debt. "[O]utstanding financial obligations incurred during the marriage which are not solely the responsibility of the spouse who incurred them may be offset against the total marital assets to be divided. Moreover, it is well settled that [t]rial courts are granted substantial discretion in determining what distribution of marital property[—including debt—]will be equitable under all the circumstances" (*McKeever v McKeever*, 8 AD3d 702, 702-703 [2004] [internal quotation marks and citations omitted]). Here, unfortunately, Supreme Court did not identify any statutory factors but, instead, concluded that, as a matter of fact, "the credit card debt solely in the wife's name has not been shown to be marital debt." The credit card at issue was in the wife's name and the husband was an authorized user. The wife testified that the parties paid the balance on the card in March 2013, that she never used the credit card after she left the marital residence, that she canceled the credit card after she learned that it had a balance of more than $7,000 and that she began paying the credit card bill in 2014. During his testimony, however, the husband conceded that at least some of the debt at issue was marital, but he was paying the credit card bill in 2013. Under the circumstances, we find that one half of the credit card debt was marital and must be shared by the parties (*see Evans v Evans*, 55 AD3d at 1081).

The wife also challenges Supreme Court's determination that she was not entitled to spousal maintenance. The court's discretion with regard to maintenance "will not be disturbed as long as the court explains the basis for its conclusions, considers the parties' predivorce standard of living and [the] statutory fac-

tors—such as the income and property of the parties, the length of the marriage, the age and health of the parties, the need of either party to obtain education or training and the equitable distribution of the marital property" (*Funaro v Funaro*, 141 AD3d 893, 898 [2016]). Here, because the record reflects that the wife is an educated and capable person who is able to support herself, we find that Supreme Court's refusal to award maintenance to her was not an abuse of discretion (*see id.*). Finally, although the wife is the less monied spouse, we find no abuse of the court's considerable discretion in its awards of counsel fees and expert fees (*see Lowe v Lowe*, 123 AD3d 1207, 1211 [2014]).

Peters, P.J., Rose, Devine and Mulvey, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by (1) reversing so much thereof as deemed defendant to be the primary physical custodian of the parties' minor children, (2) directing defendant to provide and maintain health insurance coverage for the parties' minor children, and plaintiff shall pay 32% of the cost of such coverage, (3) directing defendant to pay plaintiff monthly child support in the amount of $2,835, retroactive to July 26, 2013, with any child support arrears to be paid at a rate of at least $500 each month until paid in full, and (4) directing that one half of the credit card debt is to be shared equally by the parties, and, as so modified, affirmed.