Matter of Jennifer VV. v Lawrence WW. (2020 NY Slip Op 03053)





Matter of Jennifer VV. v Lawrence WW.


2020 NY Slip Op 03053


Decided on May 28, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 28, 2020

528257

[*1]In the Matter of Jennifer VV., Respondent,
v
Lawrence WW., Appellant.

Calendar Date: March 23, 2020

Before: Egan Jr., J.P., Clark, Devine, Pritzker and Colangelo, JJ.


The Arquette Law Firm, PLLC, Clifton Park (Alexandra J. Buckley of counsel), for appellant.
Copps DiPaola Silverman, PLLC, Albany (Joseph R. Williams of counsel), for respondent.



Colangelo, J.
Appeal from an order of the Family Court of Saratoga County (Pelagalli, J.), entered December 5, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 4, to modify a prior support obligation.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of two children (born in 2008 and 2012). In August 2015, the parties executed a settlement agreement that was incorporated but not merged into their October 2015 judgment of divorce. In the settlement agreement, the parties agreed to share joint physical custody of the children and to deviate from the application of the Child Support Standards Act (see Family Ct Act § 413 [hereinafter CSSA]) so that neither parent would be required to pay child support to the other. In March 2018, upon the mother's petition, Family Court modified the custody arrangement by granting the mother primary physical custody of the children from 9:00 a.m. on Saturdays to 9:00 a.m. on Wednesdays, thereby increasing her parenting time by one-half day. The court also directed, as relevant here, that the mother's residence is to be used in determining the children's school district. The father's appeal from Family Court's March 2018 custody order came before this Court, and we recently withheld decision and remitted the matter to Family Court with the direction that a new attorney for the children be assigned (Matter of Jennifer VV. v Lawrence WW., 182 AD3d 652 [2020]).
Shortly after being granted primary physical custody in the March 2018 order, the mother filed the instant petition seeking to modify the October 2015 judgment of divorce by awarding her basic child support and a pro rata share of the CSSA statutory add-ons. A Support Magistrate issued temporary orders of support for both children, the first requiring the father to pay $175 per week and the second reducing the father's obligation to $150 per week. At the conclusion of a two-day fact-finding hearing, the Support Magistrate issued an order which, using $52,000 as the mother's imputed annual income and $81,774 as the father's annual income, calculated the father's pro rata share under the CSSA to be $361.71 per week for both children. However, the Support Magistrate reduced the father's obligation to $150 per week for both children, finding that the presumptive amount was unjust or inappropriate because, among other reasons,[FN1] the children are with the father almost half of the time, during which he is taking care of all of their needs. The mother filed objections contending that the factors cited by the Support Magistrate failed to support a deviation from the CSSA and that it was error to impute annual income of $52,000 to her. Family Court agreed that $361.71 per week is the father's pro rata share, using the same annual income figures, but found that the deviation to $150 per week was unwarranted, noting that the amount was "significantly less than what the [CSSA] guidelines are for even one child." The father appeals.
We affirm. Initially, we reject the father's contention that Family Court's review of the Support Magistrate's order was limited, under an abuse of discretion standard, to whether the statutory factors considered by the Support Magistrate justified a deviation from the father's basic child support obligation. Family Court, upon the filing and review of written objections and rebuttal to a final order of the Support Magistrate, is empowered to make its own findings of fact and may do so with or without holding a new hearing (see Family Ct Act § 439 [e] [ii]; Matter of Hubbard v Barber, 107 AD3d 1344, 1345 [2013]; Matter of T.M. v J.K., 54 Misc 3d 195, 198 [Fam Ct, Ontario County 2016]).
Turning to the merits, the father maintains, among other things, that requiring him to pay the presumptive amount of child support results in an unjust and inappropriate award given the increased travel time and expense in transporting the children to and from school and his almost equally shared parenting time. According to the father, the needs of the children are easily met by a weekly support order of $150, whereas his financial situation will be untenable if he is required to pay the presumptive amount. We are not persuaded.
In calculating child support, "[t]he CSSA contains a rebuttable presumption that application of the guidelines will yield the correct amount of child support, thereby placing the burden on the party contesting application of the statutory percentage to establish that the pro rata share of support is unjust or inappropriate" (Matter of Ryan v Ryan, 110 AD3d 1176, 1180 [2013]; accord Arthur v Arthur, 148 AD3d 1254, 1257 [2017]). "[I]n making an award of child support, the court must first determine the basic child support obligation under the CSSA, and must then order the noncustodial parent to pay his or her pro rata share of the basic child support obligation, unless it finds that amount to be unjust or inappropriate" (Riemersma v Riemersma, 84 AD3d 1474, 1476 [2011] [internal quotation marks and citation omitted]; see Family Ct Act § 413 [1] [f], [g]; Bast v Rossoff, 91 NY2d 723, 727 [1998]; Matter of Cassano v Cassano, 85 NY2d 649, 654 [1995]). The father, "[a]s the party contesting this presumption," had the "burden to establish that application of the presumptive pro rata share would be unjust or inappropriate" (Matter of Dunlop v Brown, 169 AD3d 1173, 1175-1176 [2019], lvs denied 33 NY3d 905 [2019]).
The father testified that under the parties' settlement agreement incorporated into the 2015 judgment of divorce, in which he paid no support, he was already living "paycheck to paycheck" and "barely making ends meet." Since the Support Magistrate issued temporary orders of support, he has accumulated significantly more debt than he had before and has been struggling to maintain his house and pay his bills. However, the father testified that his daily expenses had "not really" changed since the March 2018 custody order, as his utilities, mortgage and phone bill remained the same, and he continued to purchase clothing and groceries for the children as he had done in the past. The father admitted, however, that he regularly incurs certain lifestyle expenses, such as dining out at restaurants "many days a week" and spending up to $80 per month on lottery tickets, and that he withdraws large amounts of cash in order to bet on various games and sporting events. On cross-examination, the father testified that although he has sought to work more hours, he has not considered changing his lifestyle to reduce his discretionary expenses. The father's bank statements introduced at the hearing reflected significantly higher discretionary spending than that to which he testified. Although the father claimed that his travel expenses have increased under the modified custody regimen, as he now drives approximately 30 minutes to transport the children to and from school 2½ days per week, he only offered conclusory testimony that he is "probably paying for more gas" and "[didn't] know exactly" how much, relying on the assertion that "the price of gas has gone up." Although the father lamented his current financial difficulties, he could not attribute his difficulties to his parenting time with the children, conceding that he had debt most of his adult life and that much of his credit card debt already existed prior to the commencement of these proceedings. In addition, it is evident to this Court that the father's discretionary spending habits have contributed significantly to his financial situation. Notably, the Support Magistrate's findings of fact are entirely devoid of any mention or analysis of the father's spending habits.
The mother testified that, by virtue of the March 2018 order, she has custody of the children from 9:00 a.m. on Saturdays to 9:00 a.m. on Wednesdays. As such, she is now responsible for providing all three meals — breakfast, lunch and dinner — for the children on Saturdays through Tuesdays, and for providing breakfast and lunch on Wednesdays during the school year. Her grocery expenses have increased by $100 or more per month, and she incurs additional expenses for activities, such as camping trips and museum visits, now that she has full weekend parenting time. In addition, she incurs the expenses related to the children's extracurricular activities that are scheduled during her parenting time, such as Girl Scouts, dance and summer camp.[FN2] On the other hand, the father's expenses have decreased.[FN3]
In deviating from the presumptive amount, great significance appears to have been placed by the Support Magistrate on the amount of time that the children are with the father. However, the Court of Appeals explicitly rejected a "proportional offset formula" whereby the noncustodial parent's child support obligation would be reduced based upon the amount of time he or she actually spends with the children (Bast v Rossoff, 91 NY2d at 730). Thus, the fact that the father has parenting time with the children three out of seven nights per week does not justify a deviation from the presumptive amount of his child support obligation (see id. at 731-732). Courts have consistently rejected attempts to apply this methodology (see Matter of Jerrett v Jerrett, 162 AD3d 1715, 1716 [2018]; Ball v Ball, 150 AD3d 1566, 1569-1570 [2017]; Matter of Ryan v Ryan, 110 AD3d at 1180; Matter of T.M. v J.K., 54 Misc 3d at 202).
We recognize that, in custodial arrangements such as this, the total cost of supporting children is increased given the need to duplicate certain household costs in each parent's home (see Bast v Rossoff, 91 NY2d at 730; Matter of Mitchell v Mitchell, 134 AD3d 1213, 1215 [2015]). However, we have consistently held that "the costs of providing suitable housing, clothing and food for a child during custodial periods do not qualify as extraordinary expenses so as to justify a deviation from the presumptive amount" (Matter of Mitchell v Mitchell, 134 AD3d at 1215-1216 [internal quotation marks, brackets and citation omitted]; see Matter of Ryan v Ryan, 110 AD3d at 1180-1181; see also Family Ct Act § 413 [1] [f] [9]). Nor does payment of ordinary household expenses and payment of some of a child's activities constitute evidence of nonmonetary contributions to a child's care and well-being (see Matter Jerrett v Jerrett, 162 AD3d at 1717; Matter of Jones v Reese, 227 AD2d 783, 784 [1996], lv denied 88 NY2d 810 [1996]). Finally, with regard to the Support Magistrate's conclusion that the mother's expenses were substantially reduced as a result of the father's expenses incurred during extended visitation, such conclusion is contradicted by the record. Accordingly, we find that Family Court did not abuse its discretion in ordering that the father pay child support in accordance with the CSSA.
Egan Jr., J.P., Clark, Devine and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The Support Magistrate cited the following reasons for reducing the father's support obligation: (1) awarding the presumptive amount will diminish the children's standard of living with the father; (2) the father is also making nonmonetary contributions to the care of the children; (3) as a result of the mother changing the children's school, the father is required to make several round trips each week of up to an hour and the higher cost of gasoline has increased his expense; (4) the mother's costs are significantly reduced since the children are with their father almost one half the time; and (5) the children are with the father three nights each week, which is not significantly different than the prior order, wherein no support was ordered.

Footnote 2: The annual cost of the children's dance activities, in which they participated during the shared custody protocol, will increase from $750 to $1,300. The cost for both children to participate in the Girl Scouts program and attend summer camp will be an additional $425 per year over prior years.

Footnote 3: The father will no longer be paying for the youngest child's nursery school, as the child will be attending kindergarten in the coming school year. The father admitted that almost every Friday night, which is approximately one third of his parenting time, he and the children eat dinner and sleep at his mother's house. As a result, he does not incur any expense for food, lights, water or utilities during this time.